2009 WY 32

In the Matter of The WORKER'S COMPENSATION CLAIM OF David J. MONTOYA, An Employee of Kennecott Energy Company: David J. Montoya, Appellant (Claimant),

v.

State of Wyoming ex rel. Wyoming Workers' Safety and Compensation Division, Appellee (Respondent).

No. S–07–0203.

Supreme Court of Wyoming.

March 6, 2009.

Representing Appellant: Kenneth DeCock, Plains Law Offices, LLP, Gillette, Wyoming.

Representing Appellee: No appearance.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1]    David Montoya appeals the denial of his claim for worker's compensation benefits. Mr. Montoya claims that he suffered injuries from an accident during work-related activities that aggravated a preexisting medical condition. The Wyoming Workers' Compensation Division found Mr. Montoya's condition solely related to his preexisting condition. The Division's denial was upheld by the Office of Administrative Hearings (OAH). The OAH decision was affirmed by the district court. We reverse the decision of the

OAH and remand with the directive that the Division award Mr. Montoya benefits.

## ISSUES

[¶ 2]    Mr. Montoya presents three issues:

Is there substantial evidence to support the Hearing Officer's conclusion?

Is the Hearing Officer's decision arbitrary and capricious?

Did the Hearing Officer misinterpret case law and hold [Mr. Montoya] to an improper burden of proof?

## FACTS

[¶ 3]    In 1999, Mr. Montoya was involved in a non-work related automobile accident, wherein he was struck from behind by another vehicle.  He suffered what was described as "whiplash" injuries, resulting in back and neck pain.  Mr. Montoya testified he regularly suffered migraine headaches and impaired vision immediately after the accident but the worst of the symptoms cleared up after about three months.  The evidence indicates Mr. Montoya continued to suffer from migraine headaches intermittently after the automobile accident.  Secondary to the migraines were vision problems, speech problems and nausea.  The physical symptoms, however, did not interfere with Mr. Montoya's ability to perform his job duties as a mine electrician.

[¶ 4]    The work-related accident at issue happened on February 10, 2003.  Mr. Montoya's then current employer was Kennecott Energy Company (Kennecott), where he had worked since about 1997.  He had worked as a mine electrician for at least sixteen years in total.  On February 10, 2003, Mr. Montoya slipped and fell on ice while at work.  Mr. Montoya remembers falling on his side, although he does not remember which side. He does remember losing his hardhat in the fall.  Within fifteen to forty-five minutes after the fall, Mr. Montoya experienced a severe headache, impaired vision, slurred speech, and was moderately incoherent.  At that time, because his symptoms were similar to those he experienced after his 1999 automobile accident, Mr. Montoya attributed his symptoms to that 1999 accident.  Conse-

quently, after discussing the matter with his supervisor and the human resources representative, it was decided not to file an incident report.

[¶ 5] Mr. Montoya immediately called his physician, Dr. Amin Rasul, and was seen that same day. Dr. Rasul's medical chart note states:

The patient came in complaining of having speech difficulty as well as visual changes and trouble with memory. He said he has had these symptoms on and off since the time of his accident. He says that it usually starts in his lower back and he does hurt all over. He feels like there are pins and needles and this is usual with his migraine headaches. If he sleeps it off, he gets better. He gets tunnel vision where he sees in the middle, but not in the periphery. His vision gets really fuzzy in the peripheral. He cannot concentrate. He describes his vision as getting very blurry and it looks like he is seeing through a cloud of smoke. He has been taking chiropractic treatments, but not in the last few weeks, and since then his headaches have been coming on progressively. He has not been getting chiropractic treatment because he has started on the Project 108, according to him, as of January 1st. He also at the present time of this visit denies significant headache and says headache has subsided some. He denies numbness and tingling. He denies visual symptoms right now.... He also does not have any speech problems right now. This morning when he woke up he did have that.

[¶ 6] By letter dated February 12, 2003, the human resources representative from the mine contacted Dr. James Naramore, requesting he conduct a functional capacity evaluation of Mr. Montoya. In the letter, she stated she was concerned about Mr. Montoya's ability to perform his job safely because of the symptoms he had displayed when she saw him after his fall at work two days earlier. She related to Dr. Naramore that Mr. Montoya had not been harmed in the fall, but rather all his symptoms stemmed from the 1999 automobile accident. She concluded by stating Mr. Montoya had been placed on medical leave and would not be allowed to return until he received a medical release.

[¶ 7] What followed was a battery of medical examinations. Dr. Naramore saw Mr. Montoya for the first time on February 12, 2003. In his note from the examination, Dr. Naramore related the history of Mr. Montoya's automobile accident in 1999 but said nothing about Mr. Montoya's fall at work on February 10, 2003. Dr. Naramore summed up the history he was aware of by stating:

This patient has "migraine headaches" which evidently occurred Monday. They have been less frequent than they were initially. He had not had a migraine for some time but on Monday evidently was having one and could not track with his supervisors. He began stuttering on Monday, complained of a headache and evidently was unable to continue doing his work.

Dr. Naramore's physical examination of Mr. Montoya revealed Mr. Montoya was suffering from short-term memory loss. The results of the exam were otherwise unremarkable.

[¶ 8] Mr. Montoya continued treating with Dr. Naramore. In consultation with Dr. Naramore, Mr. Montoya simultaneously received treatment from Dr. Tuenis Zondag of Central Wyoming Neurosurgery. Despite their best efforts, Mr. Montoya continued to suffer migraine headaches. In order to rule out a closed head injury, Dr. Zondag ordered a brain MRI, which was conducted on March 31, 2003. The results of the brain MRI were normal (except for a sinus condition not at issue).

[¶ 9] By the end of April 2003, Mr. Montoya told Dr. Naramore that he felt good and would like to return to work. Having found no permanent injury and believing Mr. Montoya's migraines were being adequately controlled with medication, Dr. Naramore gave Mr. Montoya an unconditional work release.

[¶ 10] Mr. Montoya returned to his job as a mine electrician for Kennecott in early May. Mr. Montoya testified that after he returned to work he had trouble doing tasks that used to be easy for him:

Q: Did you experience problems performing your job after the fall?

A: Yes.

Q: What kind of things?

A: I had real problems keeping as an electrician when my primary jobs was [sic] to read prints and stuff like that, troubleshoot the equipment. And I had problems transposing the information I'd gotten from the prints over and do my job. I just—I'd get over here and I'd forget what the heck I was doing; I'd have to go back to the prints, I mean for what would have been a simple problem.

Q: Was that a normal part of your job?

A: Previous, yes.

Q: Did you have any problems with that previous to your fall?

A: No. In fact, I used to pride myself in being fairly good at it. I'd look at the print and troubleshoot by looking at a print and ... a lot of times, go to the problem. But I definitely had that problem afterwards.

Eventually, Mr. Montoya's concentration problems led to several incidents where he endangered the safety of both himself and others. In mid-December, Kennecott again sent Mr. Montoya home. Mr. Montoya did not receive another work-release from Dr. Naramore until mid-April 2004. The work-release required Mr. Montoya to be under full supervision when doing any safety-sensitive jobs. Mr. Montoya never returned to Kennecott because Kennecott could not accommodate this requirement in the positions it had available.

[¶ 11] Because Mr. Montoya continued to have problems, Dr. Naramore referred him to Dr. Michael Harvey, a licensed psychologist, for a neuropsychological examination. Dr. Naramore specifically asked Dr. Harvey "for clarification with regard to possible etiologies of [Mr. Montoya's] symptoms and recommendations for treatment." Dr. Harvey also noted there was a worker's compensation case pending. Dr. Harvey specified that "[s]ince the initial referral was from [Mr. Montoya's] physician this evaluation will be focused on referral questions from Dr. Naramore and issues involved in the compensation case, which would make this a forensic referral, will not be addressed directly in this report."

[¶ 12] The examination was conducted on January 6, 2006. Dr. Harvey opined that Mr. Montoya suffered a mild traumatic brain injury, probably caused by the automobile accident in 1999:

These residual neurocognitive deficit[s] due to sheering most likely would be consistent with a mild traumatic brain injury. Although there will remain some question as to when this injury might have occurred the evidence in the record would indicate the most probable time of mild traumatic brain injury would be during the automobile accident in November 1999. There was clear evidence of injury to the neck and back consistent with whiplash injury. Whiplash can certainly result in a mild traumatic brain injury due to a sheering injury of this type.

Dr. Harvey also noted that Mr. Montoya's symptoms worsened after Mr. Montoya's fall at work in February 2003.

[¶ 13] Upon reviewing Dr. Harvey's report, Dr. Naramore wrote the following in a letter:

After seeing Mr. Montoya in my office on several occasions and in follow-up March 7, 2006, I have concluded that his amnesia and forgetfulness regarding a fall, which occurred February 10, 2003 were related to that fall. I think it is entirely possible that Mr. Montoya absolutely forgot about the fall when I saw him initially on February 12, 2003. Mr. Montoya was struggling to explain all of his symptoms when in fact he probably actually forgot about a major precipitating cause of his symptoms which indeed could have been the fall as mentioned above.

I have also read Dr. Harvey's notes. I do not feel that this patient can be further improved with more treatment. He seems to be functioning well at the job currently. I think it would be very difficult to establish exactly the cause of all of his difficulties, though now looking at the total picture, I do believe the fall played a major role in his difficulties at work subsequently.

Indeed, previously, we have been focused very much on the patient's symptoms and ongoing headache problems not exactly putting together the fact that a fall and a head injury could have caused all of these since the patient did not bring that to the table when he initially saw me. Looking at the total picture now, I really do feel that Mr. Montoya's symptoms were possibly entirely due to that fall on February 10, 2003. I do not feel the patient probably suffered a brain injury in a motor vehicle accident that he recalled on November 8, 1999. In fact, that was mostly a neck injury and not a cranial injury. He no doubt suffered a significant concussion and headaches as a result of the fall, which I had heretofore not realized occurred on February 10, 2003.

[¶ 14] The hearing in this case was held May 16, 2006. Besides the introduction of medical records, both Mr. Montoya and his wife testified. Mr. Montoya and his wife had been married since 1997. Mrs. Montoya testified to the problems Mr. Montoya had after his automobile accident in 1999, including migraines, stuttering, and vision problems. She testified that the symptoms eased after the first month of the accident, although he continued to have migraines. Mrs. Montoya testified that, after the work-related fall in 2003, Mr. Montoya's condition worsened substantially. She testified that he developed serious sleep problems, his stuttering became much worse; he lost his short term memory almost completely; and he has trouble controlling his emotions—he cries easily and "if he isn't crying, then he's angry." She never knew him to be angry before the fall but now he gets angry regularly for no readily apparent reason. The short term memory problems are also new.

[¶ 15] In his final order, the hearing officer determined:

In complicated compensation cases, medical testimony is essential. *Bocek v. City of Sheridan,* 432 P.2d 893 (Wyo.1967). Also see, *In re Boyce* [2005 WY 9, ¶¶ 11, 16, 105 P.3d 451, 454–55 (Wyo.2005) ]. Needless to say, this is a complicated case. The evidence is clear that the Claimant was suffering from a pre-existing condition. What is not clear, however, is the extent of that pre-existing condition. To compound said matter, the Claimant is a poor historian. He was unable to state when the last time was that he suffered migraine symptoms prior to the February 10, 2003 accident. Furthermore, when he testified about the times prior to the fall when he would feel so poorly that he had to pull over to the side of the road while driving, he was not able to say when those occurred. He testified that, on one occasion, he felt so nauseous he thought he was going to get sick. However, he could not recall whether this happened before or after February 10, 2003. He testified that it could have been before or after the February 10, 2003 accident. The evidence presented, however, clearly indicates that the Claimant was suffering from an ongoing problem. Dr. Rasul's chart note on February 10, 2003 indicates that the Claimant was complaining of speech difficulty, visual changes and trouble with memory and that the Claimant advised he "had these symptoms on and off since the time of his accident." (*Exhibit S–4.*) When the Claimant was discussing his condition on February 10, 2003 with Aaron Spielman [Montoya's supervisor], the Claimant stated that "when he gets to feeling this way he stutters." Mr. Spielman went on to state, "I was concerned about Dave's safety and especially after he stated that when he gets to feeling poorly he sometimes has to pull to the side of the road while driving." (*Exhibit S–5.*) In addition, it was the Claimant's own belief that his symptoms on February 10, 2003 were related to the automobile accident that happened in November of 1999.

In view of such ongoing condition, medical testimony is essential to provide the causal link between the pre-existing condition and the conditions of employment. This, the Claimant has failed to do.

The hearing officer went on to summarize the medical evidence that was presented at the hearing. The hearing officer concluded that none of the medical evidence established causation between Mr. Montoya's fall at work and a material aggravation of his pre-existing condition. The hearing officer concluded

that "Claimant has failed to meet his burden of proof to show that he sustained a compensable injury on February 10, 2003."

## DISCUSSION

### Standard of Review

[¶ 16]   Our scope of review is prescribed by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2007), which provides in pertinent part:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.   In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error.   The reviewing court shall:

* * * *

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

* * * *

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 17]   As recently explained in *Dale v. S & S Builders, LLC*, 2008 WY 84, 188 P.3d 554 (Wyo.2008), whenever this Court is called upon to review a decision based on the evidence in the case, we review the decision to see if it is supported by substantial evidence.   Questions of law are reviewed de novo.   *Id.*, ¶¶ 22, 25, 26, 188 P.3d at 561.   "If the hearing examiner determines that the burdened party failed to meet his

burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole."   *Id.*, ¶ 22, 188 P.3d at 561. *See also Horn–Dalton v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2009 WY 14, ¶ 7, 200 P.3d 810, 813 (Wyo.2009).

### Jurisdiction

[¶ 18]   As with all cases that come before us, our first duty is to ensure we have jurisdiction to review the case.   *Ragsdale v. Hartford Underwriters Ins. Co.*, 2007 WY 163, ¶ 4, 169 P.3d 78, 80 (Wyo.2007).   This case presents a jurisdictional question in that the Division included in its reasons for denying Mr. Montoya's claim for benefits that Mr. Montoya did not timely file his claim as required by Wyo. Stat. Ann. § 27–14–503.[1] The hearing officer, in setting out the issues before him at the hearing, listed the timeliness of the filing of the claim as one of the issues.   Ultimately, in an otherwise very thorough decision, the hearing officer expressly declined to decide the issue of the timeliness of the filing of the claim and instead decided the case solely on its merits. The problem with this approach is that if the claim was not timely filed, the OAH would not have the authority to decide the case on its merits.   The instant order would be void, leaving nothing for this Court to review.   In short, the question of timeliness is of jurisdictional magnitude and must be decided before turning to the merits of the case.

[¶ 19]   Fortunately, although the issue of timeliness was not decided by the hearing officer, we need not remand the case because the uncontradicted evidence at the hearing was that Mr. Montoya complied with the pertinent statute.[2]   At the outset, we note

1.  Wyo. Stat. Ann. § 27–14–503 (LexisNexis 2007), entitled "Statute of limitations," states, in pertinent part:
    (a) A payment for benefits involving an injury which is the result of a single brief occurrence rather than occurring over a substantial period of time shall not be made unless in addition to the proper and timely filing of the injury reports, an application or claim for ben-

efits is filed within one (1) year after the date the injury occurred or for injuries not readily apparent, within one (1) year after discovery of the injury by the employee.   The injury report is not a claim for benefits.

2.  We take this opportunity to again encourage hearing officers to determine all issues properly before them.   *See Rice v. State ex rel. Wyoming*

the Division seems to have abandoned the issue. During the course of the hearing, the attorney for the Division made only one brief comment regarding timeliness in his opening statement. He never mentioned the issue again. Most importantly, the attorney for the Division did not mention the timeliness issue in his closing argument.

[¶ 20] On the other side, Mr. Montoya testified as to when he discovered he had a work-related injury and that he filed his claim shortly thereafter. His testimony is uncontradicted. Since the statute at issue is a discovery statute, and the only testimony is that its requirements were complied with, it is not surprising the Division abandoned the issue.[3] Given the evidence, we find Mr. Montoya timely filed his claim for benefits, and we therefore have jurisdiction to continue our review.

### Aggravation of Preexisting Condition

[¶ 21] The hearing officer determined Mr. Montoya had not met his burden of proving his on-the-job injury aggravated a preexisting condition. Specifically, the hearing officer determined Montoya had not provided adequate medical evidence proving the relationship between his work-related injury and his preexisting condition.

[¶ 22] In the spirit of not reinventing the wheel, in cases involving the issue of material aggravation of an existing condition, the principles governing a claimant's burden of proof are well known:

> In order to be eligible to receive worker's compensation benefits, a claimant must have sustained an "injury" as defined by Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2001). " 'Injury' " means any harmful change in the human organism other than normal aging . . . arising out of and in the course of employment while at work. . . ." To demonstrate that an injury arose out of the course of employment, the claimant must establish a causal connection between the work-related incident and the

*Workers' Safety and Compensation Div.,* 2001 WY 21, ¶ 18, 19 P.3d 508, 514 (Wyo.2001).

**3.** *Gillis v. F & A Enterprises,* 934 P.2d 1253, 1256 (Wyo.1997) (under a discovery statute, the statute

injury. *Hanks v. City of Casper,* 2001 WY 4, ¶ 6, 16 P.3d 710, 711 (Wyo.2001). The claimant bears the burden of proving this causal connection by a preponderance of the evidence. *Clark v. State ex rel. Wyoming Workers' Safety and Compensation Div.,* 2001 WY 132, ¶ 19, 36 P.3d 1145, 1150 (Wyo.2001). "A 'preponderance of the evidence' is defined as 'proof which leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence.' " *Matter of Worker's Compensation Claim of Thornberg,* 913 P.2d 863, 866 (Wyo.1996) (quoting *Scherling v. Kilgore,* 599 P.2d 1352, 1359 (Wyo. 1979)).

*Anastos v. General Chemical Soda Ash,* 2005 WY 122, ¶ 20, 120 P.3d 658, 665–66 (Wyo. 2005).

> "Injury," as the term is defined in Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2003) of the Wyoming Workers' Compensation Act, does not include any injury or condition preexisting at the time employment begins with the employer against whom a claim is made. However, "in Wyoming an employer takes the employee as he finds him." *Lindbloom v. Teton International,* 684 P.2d 1388, 1389 (Wyo.1984). If an employee suffers from a preexisting condition, that employee may still recover if his employment substantially or materially aggravates that condition. *Id.* In *Lindbloom,* we cited with approval the widely accepted treatise, Larson's Workmen's Compensation Law, for the proposition that:

> > Preexisting disease or infirmity of the employee does not disqualify a claim under the "arising out of employment" requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought.

of limitations is not triggered until a plaintiff knows or has reason to know a cause of action exists).

1 Larson's Workmen's Compensation Law, § 12.20, p. 273–276. Larson goes on to say:

> Since the rule of law stated at the beginning of this section is so widely accepted, in practice most of the problems in this area are medical rather than legal. * * * * It will be found then that denials of compensation in this category are almost entirely the result of holdings that the evidence did not support a finding that the employment contributed to the final result. Whether the employment aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact, not law, and a finding of fact on this point * * * * based on any medical testimony * * * * will not be disturbed on appeal.

*Id.*, § 12.20, p. 313–16.

*Boyce v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2005 WY 9, ¶ 10, 105 P.3d 451, 454–55 (Wyo.2005).

> Expert opinion testimony ordinarily will be required to establish the link between the employee's work activity or injury and the preexisting disease or condition; the expert need not state with specificity that the work activities or injury materially or substantially aggravated, accelerated, or combined with the preexisting disease or condition to necessitate the medical treatment for which compensation is sought; and the expert need not apportion between the work activity or injury and the preexisting disease or condition; the relative contribution of the work activity or injury and the preexisting disease or condition is not weighed.

*Ramos v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2007 WY 85, ¶ 18, 158 P.3d 670, 677 (Wyo.2007) (citing *Boyce*, ¶¶ 11, 16, 105 P.3d at 455–56).

■ [¶ 23] We find that, applying the above analysis, the overwhelming weight of the evidence supports a finding that Mr. Montoya's February 2003 work-related fall aggravated a preexisting condition. We disagree with the hearing officer that more specific medical evidence was essential for Mr. Montoya to establish his case.[4] Dr. Harvey opined that Mr. Montoya suffered from a mild, traumatic brain injury. While he attributed it most likely to Mr. Montoya's 1999 automobile accident, since the claim is for an aggravation of a preexisting condition such opinion is not inconsistent with the claim. More importantly, Dr. Harvey noted that Mr. Montoya's symptoms were aggravated by his 2003 fall.

[¶ 24] Dr. Naramore had the final word. His letter very strongly states that Mr. Montoya's current symptoms are attributable to his 2003 fall. The hearing officer dismissed this evidence because "Dr. Naramore fails to address the Claimant's ongoing condition prior to the February 10, 2003 accident and the relationship of that accident with the preexisting condition." As a matter of law, this the doctor need not do. We reiterate:

> [T]he expert need not apportion between the work activity or injury and the preexisting disease or condition; the relative contribution of the work activity or injury and the preexisting disease or condition is not weighed.

*Ramos*, ¶ 18, 158 P.3d at 677. Dr. Naramore's opinion was sufficient to establish an aggravation of a pre-existing condition.

[¶ 25] Even should the medical evidence be considered weak, there is other, strongly circumstantial, evidence supporting Mr. Montoya's claim. Both Mr. and Mrs. Montoya testified that, while Mr. Montoya suffered some similar symptoms before his fall, after the fall the symptoms were exacerbated and new symptoms appeared. All medical evidence supports this testimony. Most telling, and incontrovertible, is the fact that Mr. Montoya was able to perform his job functions for over three years after his November 1999 automobile accident. After his work-related fall in 2003, he was no longer able to perform these same functions.

4. To the extent the hearing officer believed medical testimony regarding the issue of causation is an essential component of any claimant's case as a matter of law, he misreads our precedent. While medical evidence is helpful and "ordinarily" should be provided, it is not essential.

CONCLUSION

[¶26]   Given the state of the evidence, we find the overwhelming weight of the evidence proves a material aggravation of pre-existing condition.   We remand this case to the district court with instructions that the order of the OAH be reversed and Mr. Montoya awarded benefits.