2007 WY 58

**David B. STEWART, Appellant (Employee/Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Objector/Respondent).**

**No. 06–154.**

Supreme Court of Wyoming.

April 11, 2007.

Representing Appellant: David M. Gosar, Jackson, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; John W. Renneisen, Deputy Attorney General; Kristi M. Radosevich, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] After undergoing surgery for a work-related injury, Mr. Stewart suffered an anoxic brain injury due to an accidental overdose of narcotic medications. Mr. Stewart sought worker's compensation benefits for the brain injury pursuant to the second compensable injury rule. The Office of Administrative Hearings ("OAH") denied benefits finding that the use of his wife's narcotic pain medication broke the chain of causation and, consequently, Mr. Stewart failed to meet his burden of proof. Mr. Stewart challenges the order denying benefits. We affirm.

## ISSUES

[¶ 2] Mr. Stewart presents the following issues for review:

I. Did the Office of Administrative Hearings err as a matter of law when it concluded that Mr. Stewart's use of non-prescribed medication to treat pain resulting from surgery for a work-related hernia—medication that when added to the prescription pain medication he also used caused anoxic brain injury—disqualified him from workers' compensation coverage for the brain injury?

II. Was the essential finding that Dr. Ferguson's opinion was "speculative" not supported by substantial evidence and/or arbitrary and capricious?

The Wyoming Workers' Safety and Compensation Division ("Division") states the issue as:

Whether substantial evidence supports the hearing examiner's decision that [Mr.] Stewart failed to establish his anoxic brain injury, caused by an overdose, was a compensable injury as defined by the Wyoming Workers' Compensation Act?

## FACTS

[¶ 3] On September 8, 2003, Mr. Stewart sustained a left inguinal hernia while lifting construction materials for his employer. Outpatient surgery was performed on September 18, 2003, by Dr. Poore to repair the condition. Mr. Stewart tolerated the procedure well and was released to his wife's care later that afternoon.

[¶ 4] Dr. Poore prescribed pain medication, Lortab and Percocet, to assist Mr. Stewart in dealing with the pain as he recovered from the surgery. According to Dr. Poore, Mr. Stewart was to take the Lortab if he was experiencing mild pain and Percocet for severe pain. He did not intend that Mr. Stewart take both medications at the same time. Although he had no independent recollection of a specific discussion regarding the prescriptions with Mr. Stewart, Dr. Poore indicated that he frequently gives these prescriptions and typically discusses proper use of the medications with the patient.[1]

[¶ 5] Mr. Stewart testified that he did not recall receiving those instructions. Instead of taking either the Lortab or the Percocet depending on the degree of pain he was experiencing, he took both pills every four

---

1. Mr. Stewart testified that his wife, a retired registered nurse, cautioned him against taking both prescriptions at the same time.

hours. According to Mr. Stewart, he felt it was permissible to combine the medications because nothing contained in the written hospital discharge instructions or on the prescription bottles indicated that the two could not be taken together.

[¶ 6] At approximately 5:00 a.m. the following morning, Mr. Stewart awoke his wife complaining of pain and an inability to sleep. He demanded that she give him her prescription pain pills because his medications were not working. He testified that he shook her and said, "[Y]ou got to give me a Methadone, I can't stand all of this." Pursuant to his request, Mrs. Stewart gave her husband two Methadone pills for his pain and one Xanax pill to help him sleep.[2] When Mrs. Stewart awoke the next morning, she noted that Mr. Stewart was resting comfortably. However, when she attempted to wake him at 9:00 a.m., Mr. Stewart did not respond. She summoned an ambulance and Mr. Stewart was taken to the emergency room for treatment. Mr. Stewart was diagnosed with an anoxic brain injury resulting from an overdose of mixed medication.[3] After remaining unresponsive for a week, he was transferred to a hospital in Salt Lake City for further treatment. Mr. Stewart responded favorably to the continued treatment and, although he had not fully recovered, was released from the hospital on October 1, 2003. Mr. Stewart testified that his condition has improved over time, but he continues to suffer residual effects as a result of his brain injury.

[¶ 7] Mr. Stewart applied for worker's compensation benefits. The Division approved benefits related to the hernia, but denied coverage for the anoxic brain injury. Mr. Stewart timely objected to the Division's decision. A contested case hearing was held before the OAH. The hearing examiner upheld the denial of benefits finding that "[b]ecause [Mr.] Stewart ingested narcotic medication that was not prescribed for his work injury, [Mr.] Stewart's original injury was not the direct cause of the subsequent anoxic brain injury." Mr. Stewart appealed to the district court, which affirmed the decision of the OAH. This appeal followed.

### STANDARD OF REVIEW

[¶ 8] Our review of administrative decisions is limited to the factors specified in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005), which states:

(c)To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

When conflicting evidence is presented at the administrative hearing, as is the case here, we review the administrative decision pursuant to the substantial evidence test. *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 22, 49 P.3d 163, 171 (Wyo.2002). Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. *Id.*, ¶ 12, 49 P.3d at 168. It is more than a

---

**2.** These prescriptions were issued to Mrs. Stewart for a back condition.

**3.** The emergency room records revealed that Mr. Stewart's "[u]rine toxicity screen is positive for benzodiazepines, THC, and opiates."

scintilla of evidence. *Id.* "[W]e examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal." *Id.* Additionally, however,

> [e]ven when the factual findings are found to be sufficient under the substantial evidence test, ... this court may be required to apply the arbitrary-and-capricious standard as a safety net to catch other agency action which prejudiced a party's substantial right to the administrative proceeding or which might be contrary to the other WAPA review standards.

*Spletzer v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2005 WY 90, ¶ 9, 116 P.3d 1103, 1109 (Wyo.2005) (quotation marks omitted).

### DISCUSSION

[¶ 9] Mr. Stewart contends that he is entitled to receive worker's compensation benefits for his anoxic brain injury pursuant to the second compensable injury rule. He claims that the OAH erred when it concluded he was disqualified from coverage due to his use of his wife's prescription medication. Mr. Stewart contends that he would not have suffered the anoxic brain injury if he had not been attempting to cope with the pain caused by his workplace injury. He further contends that the medication overdose was purely accidental and, consequently, compensable.

[¶ 10] We have recognized that a claimant is entitled to receive additional worker's compensation benefits if "an initial compensable injury ripens into a condition requiring additional medical intervention." *Carabajal v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2005 WY 119, ¶ 12, 119 P.3d 947, 951 (Wyo.2005) (quoting *Yenne–Tully v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 12 P.3d 170, 172 (Wyo.2000) (*Yenne–Tully I* )). To be eligible for benefits, "the original compensable injury must be the direct cause of the subsequent injury." *Yenne–Tully v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2002 WY 90, ¶ 10, 48 P.3d 1057, 1062 (Wyo.2002) (*Yenne–Tully II* )

(emphasis omitted). As the claimant, Mr. Stewart bears the burden of proving the causal connection between his brain injury and the course of his employment. *Stuckey v. State ex rel. Wyo. Workers' Comp. Div.,* 890 P.2d 1097, 1098 (Wyo.1995).

[¶ 11] In this case, the hearing examiner concluded that Mr. Stewart failed to meet his burden of proving that the original injury was the direct cause of his subsequent anoxic brain injury because the intentional ingestion of his wife's pain medication broke the causal chain. Mr. Stewart does not deny taking non-prescribed narcotic medication; however, he contends that the hearing examiner erred by focusing exclusively on this fact. He claims that the "legal key to deciding this case [is] whether the overdose was accidental." Mr. Stewart cites to the following cases which he claims are supportive of his proposition that accidental consequences following a work-related injury are compensable: *Osborn v. Ohio Bureau of Workers' Comp.,* 134 Ohio App.3d 645, 731 N.E.2d 1189 (1999) (awarding benefits for death resulting from the claimant taking more of his medication than was prescribed); *Eagle Safe Corp. v. Egan,* 39 Ark.App. 79, 842 S.W.2d 438 (1992) (finding death resulting from an overdose compensable because the doctor prescribed the medication as part of the treatment for the work-related injury); *Bruning v. Sheffield Farms Co.,* 8 A.D.2d 241, 187 N.Y.S.2d 666 (App.Div.1959) (claimant's death from overdose of sleeping pills following surgery for a work-related injury was compensable because an inference could be drawn that the pills were given to decedent while he was at the hospital to be taken at home as the need arose).

[¶ 12] The cases cited by Mr. Stewart are distinguishable. In those cases, the claimants accidentally overdosed by taking medication that was prescribed and/or provided to them by their physician. As the hearing examiner noted, "[Mr.] Stewart did not follow his physician's orders, did not call his physician to report his problems with pain, or seek less drastic alternatives for problems he was having after his minor hernia procedure." Mr. Stewart did not take his wife's narcotic pain medication by accident or

mistake. He demanded that she give him her prescribed medication. A subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is not compensable unless "it is the direct and natural result of a compensable primary injury." 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 10.01, at 10–2 (2006). Mr. Stewart's intentional conduct was an independent intervening cause of the subsequent brain injury. There is substantial evidence in the record to support the hearing examiner's decision that Mr. Stewart's brain injury was not the direct and natural result of the initial compensable injury.

[¶ 13] Mr. Stewart also points to our decisions in *Brierley v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 121, 52 P.3d 564 (Wyo.2002) and *State ex rel. Wyo. Workers' Comp. Div. v. Ramsey*, 839 P.2d 936 (Wyo.1992), where we upheld an award of benefits for suicidal acts, to suggest that it would create an anomaly in the law to award benefits for intentional acts on one hand and to deny benefits in a case involving an accidental overdose on the other. We do not find this argument persuasive. Those cases were governed by Wyo. Stat. Ann. § 27–14–102(a)(xi)(B)(II), which excludes from the definition of a compensable injury "[t]he employee's willful intention to injure or kill himself or another." The cases interpreting that provision determined that suicide is compensable if the original injury "produces mental derangement and the mental derangement produces suicide." *Brierley*, ¶ 12, 52 P.3d at 569. The statutory exclusion reflected in Wyo. Stat. Ann. § 27–14–102(a)(xi)(B)(II) is not at issue here. Mr. Stewart's burden was to prove a direct causal connection between the original injury and the subsequent injury.

[¶ 14] Additionally, Mr. Stewart claims that his use of his wife's prescription medication is irrelevant because it was less powerful than the prescriptions issued by his physician. He directs our attention to the testimony of his toxicologist, Dr. Ferguson, who testified that if Mr. Stewart had taken the Percocet and Lortab instead of his wife's prescriptions at 5:00 a.m., he would have suffered the anoxic brain injury regardless.

Mr. Stewart claims that Dr. Ferguson's testimony was not refuted and he faults the OAH for giving little weight to this testimony. He contends that Dr. Ferguson's testimony was sufficient to meet his burden of proof that the brain injury was not caused by taking his wife's medication. In making his contentions, Mr. Stewart confuses the scope of our appellate review. "[T]he agency, as the trier of fact, has the duty to weigh the evidence and determine the credibility of the evidence and the witnesses." *City of Casper v. Utech*, 895 P.2d 449, 451 (Wyo.1995). Because of this duty, we defer to the fact-finder on these issues. *Id.*, 895 P.2d at 452. On appeal, we do not second-guess the agency's judging of witness credibility. *In re Licensure of Jerry Penny v. State ex rel. Wyo. Mental Health Professions Licensing Bd.*, 2005 WY 117, ¶ 35, 120 P.3d 152, 171 (Wyo.2005). Instead, we review the record to determine whether substantial evidence supports the hearing examiner's decision. *Id.*

[¶ 15] In this case, conflicting evidence was presented to the hearing examiner at the administrative hearing. In addition to the testimony of Dr. Ferguson, Mr. Stewart's treating physician, Dr. Poore, testified by way of deposition. Unlike the opinion of Dr. Ferguson, Dr. Poore opined that Mr. Stewart would not have experienced the anoxic brain injury if he had only taken the Percocet and Lortab, and that the ingestion of his wife's Methadone likely caused Mr. Stewart's problems.

[¶ 16] As the finder of fact, the hearing examiner is charged with resolving conflicting testimony. *Hicks v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 11, ¶ 21, 105 P.3d 462, 471 (Wyo.2005). In doing so, the hearing examiner afforded little weight to Dr. Ferguson's opinion, describing the testimony as speculative and irrelevant. The hearing examiner determined that "Dr. Ferguson's opinion that [Mr.] Stewart's condition probably would have resulted in an anoxic brain injury if he had taken two [P]ercocet and two [L]ortab is simply speculative as that did not happen in this case." We have held that "speculative medical testimony is insufficient to satisfy a claimant's burden of proof." *Anastos v. Gen-*

*eral Chemical Soda Ash,* 2005 WY 122, ¶ 21, 120 P.3d 658, 666 (Wyo.2005).

[¶ 17]   After weighing the evidence, the hearing examiner determined that Mr. Stewart failed to meet his burden of proof that the hernia was a direct cause of his subsequent anoxic brain injury.   There is no dispute that Mr. Stewart intentionally ingested his wife's pain medication.   Dr. Poore testified that Mr. Stewart would not have suffered a brain injury if he had only taken his prescribed medication and the hearing examiner was entitled to rely on that testimony. Substantial evidence exists in the record to support the hearing examiner's decision that the brain injury was not the direct and natural result of the initial compensable injury and Mr. Stewart has failed to establish arbitrary or capricious administrative action.

[¶ 18]   Affirmed.