236 P.3d 277 (2010)
2010 WY 103
James A. HERRERA, Appellant (Respondent),
v.
STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Petitioner).
No. S-09-0191.
Supreme Court of Wyoming.
July 28, 2010.
*278 Representing Appellant: Donna D. Domonkos, Cheyenne, Wyoming.
Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; James Michael Causey, Senior Assistant Attorney General; Kristen J. Hanna, Senior Assistant Attorney General.
Before KITE, C.J., and GOLDEN, HILL, VOIGT[*], and BURKE, JJ.
*279 KITE, Chief Justice.
[¶ 1] After sustaining a work related injury ultimately requiring amputation of his right index finger, James A. Herrera began taking an anti-depressant medication. The Wyoming Workers' Safety and Compensation Division (Division) paid for the medication for two years and then denied further payment. Mr. Herrera objected and, after a contested case hearing, the Office of Administrative Hearings (OAH) awarded him benefits. The Division sought review in district court and the district court reversed the award. We reverse the district court's ruling.

ISSUES
[¶ 2] Mr. Herrera presents two issues for this Court's consideration:
1. Whether the OAH's findings and conclusions were supported by substantial evidence.
2. Whether the OAH's findings and conclusions are in accordance with the law.

FACTS
[¶ 3] On October 1, 2002, Mr. Herrera was working for Groathouse Construction as a cement finisher. He and a co-worker were setting up cement forms and the co-worker was using a 10-pound sledge hammer to pound in a stake to hold the forms. He swung the sledge hammer, missed the stake and struck Mr. Herrera's right hand. The blow crushed Mr. Herrera's right hand and index finger. Mr. Herrera filed a report of injury and the Division awarded him benefits.
[¶ 4] Between the date of injury and 2006, Mr. Herrera underwent multiple surgeries on his right hand. In June of 2006, Mr. Herrera's physician prescribed the drug Lexapro to help relieve anxiety Mr. Herrera was experiencing as a result of his injury. After the surgeries proved unsuccessful in relieving Mr. Herrera's pain and other symptoms, his right index finger was amputated in March of 2008.
[¶ 5] The Division paid medical and other benefits for the treatment of Mr. Herrera's hand, including the Lexapro prescription. In June of 2008, however, the Division issued a final determination in which it denied further payment for the Lexapro.[1] As grounds for the denial, the Division asserted that Lexapro, commonly used as an anti-depressant, was used to treat a mental injury and, pursuant to Wyo. Stat. Ann. § 27-14-102(a)(xi)(J) (LexisNexis 2007), "medications used to treat mental health conditions cannot be paid six months after the claimant reaches maximum medical improvement."[2] Mr. Herrera objected *280 to the determination and the OAH scheduled a contested case hearing.
[¶ 6] Following the hearing in October of 2008, the OAH awarded benefits. In its ruling, the OAH stated:
26. [T]his case involved a medication which appears to be prescribed for multiple reasons and not just for treatment of depression or anxiety. Herrera was a very credible witness and his unchallenged testimony was that the Lexapro was prescribed to treat his pain and elevated blood pressure, in addition to his anxiety. Herrera credibly explained that when the doctor attempted to discontinue the Lexapro prescription, Herrera's hand pain increased significantly and due to the severe hand pain his blood pressure became dangerously high. Once Herrera restarted the prescription, his hand pain decreased and his blood pressure returned to a safe level.
27. Based on the unchallenged testimony and proof of the results of the Lexapro prescription, this Office finds the Lexapro is being prescribed to treat not only Herrera's anxiety, but also his physical injury. As the Lexapro is being used as a pain control for Herrera's significant injury, this Office finds it is not subject to the limits of Wyo. Stat. Ann. § 27-14-102(a)(xi)(J), (LEXIS 2002). Therefore, Herrera has proven, by a preponderance of the evidence, all of the essential elements of his claim. Specifically, Herrera proved he suffered a significant right hand injury while in the course and scope of his duties for Groathouse, Herrera is still being treated for his injuries, and Herrera's Lexapro prescription is for the treatment of Herrera's work related physical injury.
[¶ 7] The Division sought review in district court. After considering the parties' arguments, the district court concluded substantial evidence did not support the OAH ruling and reversed the award of benefits. The district court stated:
The finding that [Mr. Herrera]'s physical injury was treated with Lexapro is contrary to the overwhelming weight of the evidence. Instead, document evidence emphasizes [Mr. Herrera]'s "depression," "situational depression," "depressive anxieties," "acute stress reaction," and helpfulness to his mood. It is noteworthy that no physician testified and no medical evidence was presented connecting the physical injury and [Mr. Herrera]'s use of Lexapro. Substantial evidence does not support the finding that [Mr. Herrera] was being treated with Lexapro for a physical injury.
Mr. Herrera appealed to this Court from the district court's ruling.

STANDARD OF REVIEW
[¶ 8] In considering an appeal from a district court's review of an administrative agency's decision, we give no special deference to the district court's decision. Dale v. S & S Builders, LLC, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). Instead, we review the case as if it had come directly to us from the administrative agency. Id. Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2009), which states:
(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
(i) Compel agency action unlawfully withheld or unreasonably delayed; and
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

*281 (D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
[¶ 9] When the burdened party prevailed before the agency, we determine if substantial evidence exists to support the agency's decision by considering whether there is relevant evidence in the entire record which a reasonable mind might accept in support of the agency's ruling. Dale, ¶ 22, 188 P.3d at 561. Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings. Bush v. State ex rel. Wyoming Workers' Comp. Div., 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo.2005) (citations omitted).
[¶ 10] If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Dale, ¶ 22, 188 P.3d at 561. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did based on all the evidence before it. Id. We review an agency's conclusions of law de novo, and will affirm only if the agency's conclusions are in accordance with the law. Id., ¶ 26, 188 P.3d at 561-62.

DISCUSSION
[¶ 11] Mr. Herrera contends the OAH's determination that he was entitled to benefits was supported by substantial evidence and must be affirmed. He points to his testimony that his physician prescribed Lexapro for pain, numbness and depression. He also points to his testimony that when he stopped taking Lexapro his pain increased, which caused his blood pressure to rise, and when he resumed taking Lexapro those physical symptoms subsided. Because the Division did not present evidence disputing his testimony, he contends, substantial evidence supported the OAH ruling.
[¶ 12] The Division asserts the district court properly held substantial evidence did not support the OAH ruling that Lexapro was prescribed to reduce Mr. Herrera's pain, numbness and high blood pressure. The Division contends the evidence showed Lexapro was prescribed to treat Mr. Herrera's agitation, stress, anxiety and depression, that is, mental injuries. Citing § 27-14-102(a)(xi)(J), the Division asserts mental injuries are compensable only when there is evidence, which did not exist in Mr. Herrera's case, that a licensed psychiatrist or clinical psychologist diagnosed such injuries. In the absence of a mental health diagnosis, the Division contends Mr. Herrera had the burden of proving Lexapro was for treatment of physical injuries which, the Division asserts, he failed to do because he did not present medical evidence supporting his testimony.
[¶ 13] Section 27-14-102(a)(xi)(J) excludes from coverage any mental injury unless it is caused by a compensable physical injury, it occurs subsequent or simultaneously with the physical injury and it is established by clear and convincing evidence. We addressed this exclusion in Brierley v. State ex rel. Wyoming Workers' Safety and Comp. Div., 2002 WY 121, ¶ 17, 52 P.3d 564, 571 (Wyo.2002) (holding clear and convincing evidence established that the claimant's attempted suicide was the result of a mental injury suffered subsequent to a compensable injury); Sechrist v. State ex rel. Wyoming Workers' Safety and Comp. Div., 2001 WY 45, ¶ 12, 23 P.3d 1138, 1141 (Wyo.2001) (holding the claimant established by clear and convincing evidence that her depression was caused by her compensable physical injury); State ex rel. Wyoming Workers' Safety and Comp. Div. v. Summers, 987 P.2d 153, 155-56 (Wyo.1999) (holding the OAH erroneously applied the exclusion to a diagnosis given in 1993 before the exclusion was enacted); and Frantz v. Campbell County Memorial Hosp., 932 P.2d 750, 754 (Wyo.1997) (holding the exclusion did not violate the equal protection clause of the Wyoming Constitution or the Fourteenth Amendment to the United States Constitution), overruled on other grounds in *282 Torres v. State ex rel. Wyoming Workers' Safety and Comp. Div., 2004 WY 92, 95 P.3d 794 (Wyo.2004). None of these cases required us to consider the question presented here: whether substantial evidence supported the OAH's findings and conclusions that medication prescribed for a mental injury was also prescribed to treat a claimant's physical injury, making § 27-14-102(a)(xi)(J) inapplicable.
[¶ 14] As reflected in paragraph 6 above, the OAH found that Mr. Herrera's physicians prescribed Lexapro not only to treat Mr. Herrera's depression and anxiety but also for treatment of his physical injury. Because it was prescribed to treat his physical injury, the OAH concluded it did not fall within the purview of § 27-14-102(a)(xi)(J), which applies only to mental injuries. The OAH made this finding on the basis of Mr. Herrera's unchallenged testimony that his physician prescribed Lexapro for pain and numbness as well as anxiety, when she discontinued the prescription, Mr. Herrera's pain increased significantly causing his blood pressure to rise, and when she restarted the prescription these physical symptoms lessened. The OAH found Mr. Herrera's unchallenged testimony concerning the reason for the prescription and the effects of discontinuing it to be "very credible" evidence that Lexapro was prescribed for treatment of his physical injury.
[¶ 15] The duty to weigh the evidence and determine the credibility of the witnesses and evidence belongs to the OAH as the fact-finder. Stewart v. State ex rel. Wyoming Workers' Safety and Comp. Div., 2007 WY 58, ¶ 14, 155 P.3d 198, 203 (Wyo. 2007); Olivas v. State ex rel. Wyoming Workers' Safety and Comp. Div., 2006 WY 29, ¶ 17, 130 P.3d 476, 485 (Wyo.2006). The OAH has the opportunity to observe the witnesses and hear their testimony and is, therefore, in the best position to judge the witnesses' demeanor, truthfulness and veracity and decide which evidence is most dependable. Id. For this reason, we defer to the fact-finder on credibility findings. Stewart, ¶ 14, 155 P.3d at 203. We do not re-weigh the evidence or second-guess the agency's determinations as to witness credibility. Id. Our task is to review the record to determine whether substantial evidence supports the hearing examiner's decision. Id.
[¶ 16] Our review of the record reveals that Mr. Herrera was the only witness who testified at the hearing. He testified that his surgeon, Dr. Heidi E. Jost, explained to him that she was prescribing Lexapro for the pain, numbness, depression and anxiety he was experiencing as a result of his injury. He testified that Dr. Jost told him that Lexapro would help him deal with the pain and other symptoms he was having and get on with his everyday life. Mr. Herrera also testified that his physician, Dr. Ann Thedieck, took him off Lexapro, but started him back on it when his pain level and blood pressure increased. Back on Lexapro, his blood pressure and pain level decreased and Dr. Thedieck advised him to continue taking it.
[¶ 17] In addition to Mr. Herrera's testimony, the record contains medical records reflecting that Mr. Herrera had "pain, numbness and depression related to inability to return to his prior profession with huge financial implications" and "now takes Lexapro." The records also reflect that Mr. Herrera saw a mental health counselor twice after undergoing surgery to amputate his finger; however, the counselor noted after the second visit that Mr. Herrera was coping well and there were no plans for follow-up.
[¶ 18] Although the medical records contained evidence that Lexapro was prescribed for depression and anxiety, the evidence presented showed that it also had the effect of treating Mr. Herrera's pain and blood pressure. The OAH found Mr. Herrera to be "very credible" and particularly found credible his testimony as to the physical effects of discontinuing, and then re-starting, the Lexapro prescription. Mr. Herrera's testimony in this regard was unchallenged. Despite references in the medical records to Mr. Herrera's depression, he was seen only twice for mental health counseling, was reported to be coping well mentally and was not seen again. The counseling records make no reference to Lexapro as a treatment option for his mental health issues.
*283 [¶ 19] From the entire record and giving due regard to the OAH's duty to weigh the evidence and opportunity to observe Mr. Herrera, hear his testimony and assess his demeanor, truthfulness and veracity, we conclude the record contains such relevant evidence as a reasonable mind might accept as adequate to support the finding that Lexapro treated Mr. Herrera's physical injury. Dale, ¶ 22, 188 P.3d at 561. Substantial evidence supported the OAH'S findings that § 27-14-102(a)(xi)(J) did not apply.
[¶ 20] In reaching the contrary result, the district court relied on references in the medical records to Mr. Herrera's "situational depression," "depressive anxieties," and "acute stress reaction." There is no doubt from the records that Mr. Herrera's physician and surgeon believed his physical injury had mental health consequences. Absent Mr. Herrera's testimony, we likely would uphold the district court's ruling. However, the task of reviewing courts is not to re-weigh the evidence but to decide whether the evidence was such as a reasonable mind might accept as adequate to support the finding. In the present case, the OAH assessed Mr. Herrera as a very credible witness whose unchallenged testimony concerning the effects of Lexapro on his physical injuries was very believable. We are not in a position to second guess that assessment.
[¶ 21] Our conclusion that Wyoming's mental injury exclusion did not apply under the circumstances of Mr. Herrera's case gains support from a decision of a Louisiana Court of Appeals construing a similar statute. In Harris v. Christus St. Patrick Hospital, 857 So.2d 1278 (La.App.Ct.2003), the claimant sustained a serious work related hand injury requiring multiple surgical procedures. Her hand remained functionally useless and she ultimately was referred to a pain management specialist who prescribed anti-depressant medication in addition to pain medication. After a worker's compensation judge ordered payment of the anti-depression medication, the employer appealed claiming error on the grounds that La. R.S. 23:1021(7)(c) and (d) provided that mental injuries must be proven by clear and convincing evidence and were not compensable unless diagnosed by a licensed psychiatrist or psychologist and the diagnosis met the criteria established in the most current Diagnostic and Statistical Manual of Mental Disorders.
[¶ 22] The court upheld the order requiring payment of the anti-depressant medication, finding that there was no evidence the claimant had psychological problems unrelated to her work injury and that her claim was based upon her "physical disability rather than the depression she suffered as byproduct of her physical injury." Id. at 1284. The court stated:
Under these circumstances, we find that Ms. Harris' request for depression medication is not governed by the heightened burden of proof and diagnostic requirements of La.R.S. 23:1021(7)(c) and (d). We simply cannot conclude that the legislature intended to increase the cost and to extend the recovery time of each physical injury claim by requiring a psychiatric or psychological consultation whenever a physician in another specialty prescribes anti-depression medication in the course of treating that physical injury. Accordingly, we hold that La.R.S. 32:1021(7)(c) and (d) apply only when the claimant alleges to be disabled as the result of a mental injury or illness.
We find the Louisiana appeals court's reasoning to be persuasive.
[¶ 23] The Division asserts the district court properly reversed the ruling because the OAH relied almost exclusively on Mr. Herrera's testimony, which was not supported by medical evidence. We have said that "the testimony of an injured worker alone is sufficient to prove an accident if there is nothing to impeach or discredit the worker's testimony, and the worker's statements are corroborated by surrounding circumstances." Nagle v. State ex rel. Wyoming Workers' Safety and Comp. Div., 2008 WY 99, ¶ 7, 190 P.3d 159, 163 (Wyo.2008). Here, the Division presented no evidence to impeach or discredit Mr. Herrera's testimony and his testimony was corroborated by medical records showing that he was treated with Lexapro for pain and numbness, as well as depression.
*284 [¶ 24] Additionally, we have said that when a single incident is alleged to have caused an injury, medical testimony is not required if it is not essential to establish a causal connection between the occurrence and the injury. Gray v. State ex rel. Wyoming Workers' Safety and Comp. Div., 2008 WY 115, ¶ 17, 193 P.3d 246, 252 (Wyo.2008). Here, there was no dispute concerning the incident that caused Mr. Herrera's injury; therefore, medical testimony was not required to establish that causal connection. The only question was whether Lexapro was prescribed solely to treat mental injuries or whether it was intended to treat Mr. Herrera's physical injury, specifically the pain and high blood pressure caused by the pain. Through his own testimony, Mr. Herrera sufficiently established that the Lexapro treated his physical injuries. Under the circumstances, he was not required to present medical testimony.
[¶ 25] We reverse the district court's order and remand for reinstatement of the OAH's order awarding benefits.
NOTES
[*] Chief Justice at time of expedited conference.
[1] The Division also issued final determinations denying travel reimbursement on the grounds Mr. Herrera did not obtain treatment from the closest available health care provider; denying temporary total disability benefits after May 28, 2008, on the ground Mr. Herrera was released to return to light duty work; denying coverage for the prescription drug Lyrica on the ground it was not for treatment of his work injury; and denying coverage for two appointments with a mental health counselor on the ground they were not related to his work injury. Prior to the contested case hearing, the parties reached a settlement agreement on these matters in which the Division agreed to withdraw its objections and pay the disputed amounts. Thus, the only matter left for determination at the contested case hearing was whether the Division's final determination denying payment for Lexapro should be upheld.
[2] Section 27-14-102(a)(xi) provides in relevant part:

(xi) "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. "Injury" does not include:
....
(J) Any mental injury unless it is caused by a compensable physical injury, it occurs subsequent to or simultaneously with, the physical injury and it is established by clear and convincing evidence, which shall include a diagnosis by a licensed psychiatrist or licensed clinical psychologist meeting criteria established in the most recent edition of the diagnostic and statistical manual of mental disorders published by the American Psychiatric Association. In no event shall benefits for a compensable mental injury be paid for more than six (6) months after an injured employee's physical injury has healed to the point that it is not reasonably expected to substantially improve.