2011 WY 93

**In the Matter of the Worker's Compensation Claim of Will TORRES, an Employee of Home Depot USA.**

**Will Torres, Appellant (Petitioner),**

v.

**State of Wyoming ex rel. Wyoming Workers' Safety and Compensation Division, Appellee (Respondent).**

No. S–10–0123.

Supreme Court of Wyoming.

June 13, 2011.

Representing Appellant: Sean W. Scoggin of McKellar, Tiedeken & Scoggin, LLC, Cheyenne, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; James Michael Causey, Senior Assistant Attorney General; Kelly Roseberry, Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1]   Appellant Will Torres sought worker's compensation benefits relating to an August 2007 back surgery that he claimed was the product of a work-related injury he suffered in December 2006.   The Wyoming Workers' Safety and Compensation Division (Division) denied benefits.   The Division's denial was upheld by the Office of Administrative Hearings (OAH) and, later, by the district court.   We will also affirm the denial of benefits.

## ISSUE

[¶ 2]   Torres presents the following issue for our consideration:

Whether the Office of Administrative Hearing's Decision that Mr. Torres was not entitled to worker[']s compensation benefits for his August 15, 2007[,] surgery and for worker['s] compensation benefits thereafter was arbitrary and capricious and not supported by the standing case law[.]

## FACTS

[¶ 3]  Torres began working for Home Depot in Cheyenne as a supervisor in the area of door and window installation in December 2000.  His employment duties included, among other things, lifting and moving heavy merchandise.  Since 2004, Torres has submitted three injury reports concerning his back.

[¶ 4]  In July 2004, Torres claimed he injured his low back when he bent over to pick up a coffee cup and something in his back "went pop."  On that occasion, Torres sought medical treatment from his family physician, complaining of pain in his low back and buttocks area, pain radiating down his left leg and across the anterior shin, and numbness in both legs to the knees.  An MRI performed on Torres' lumbar spine on July 7, 2004, revealed a degenerative back condition.  In particular, the MRI showed diffuse disc desiccation, with slightly more marked desiccation and loss of disc height at the L4–L5 level, and disc desiccation and bulging at the L5–S1 level of the spine.  In September 2005, Torres claimed to have injured his back while moving a heavy pallet.  Torres did not seek medical attention because he deemed the injury to be insignificant.

[¶ 5]  The third reported injury, which is the focus of this appeal, occurred on December 28, 2006.  Torres claimed he injured his low back, as well as his right shoulder and wrist, in a slip-and-fall accident in the Home Depot parking lot.[1]  Torres saw Dr. Cynthia Choy at Healion Emergent Care in Cheyenne, complaining of low back pain and bilateral anterior thigh numbness.  An x-ray and MRI taken of Torres' lumbar spine revealed the degenerative disc disease, but showed no evidence of acute injury.  The radiologist,

Dr. Jason Lindsey, noted mild degenerative changes at the L4–L5 level of the spine, with no significant disc bulge, protrusion, or herniation.  At the L5–S1 level, Dr. Lindsey noted mild degenerative change in the right facet joint, but otherwise within normal limits.  Dr. Lindsey also noted there was no significant interval change since the 2004 MRI.

[¶ 6]  On January 9, 2007, Torres saw Dr. Vincent J. Ross of Smart Sports Medicine Center with complaints of low back pain and pain radiating down both legs.  Dr. Ross generally diagnosed Torres with a lumbar sprain and sacroiliac sprain and recommended Torres undergo physical therapy two to three times per week.  Torres participated in some therapy sessions, but the pain in his low back continued.  Dr. Ross eventually referred Torres to Dr. Steven J. Beer, a neurosurgeon, for further evaluation.

[¶ 7]  Dr. Beer first saw Torres on February 26, 2007.  Torres reported that he had been experiencing severe low back and bilateral buttock pain since falling at work on December 28, 2006, but did not inform Dr. Beer about his previous back injuries and low back pain, or about his 2004 lumbar MRI.  Dr. Beer reviewed Torres' 2007 MRI and noted that it showed "multilevel degenerative disease."  Dr. Beer initially diagnosed a lumbar sprain and recommended conservative treatment.  He referred Torres to Dr. George Girardi at Yellowstone Surgery Center in Cheyenne for epidural steroid injections.

[¶ 8]  On March 9, 2007, Dr. Girardi performed an epidural steroid injection at the L4–L5 level of the spine, which gave Torres temporary relief of his pain.  Dr. Girardi's report for that injection noted that he was treating Torres for "[l]ow back pain with bilateral leg pain due to lumbar degenerative disc disease."  Torres saw Dr. Girardi again on April 13, 2007, and was administered bilateral L4–L5 interarticular facet joint injections, which also provided only short term relief of the pain.  Dr. Girardi's notes on that

---

1.  The injury to Torres' shoulder and wrist are not at issue in this appeal.  Consequently, we will set forth only those facts pertinent to Torres' back injury.

date indicated that Torres was suffering from "low back pain due to lumbar spondylosis."

[¶ 9] Torres returned to Dr. Beer on May 7, 2007, for further evaluation and treatment. After considering the results of the injections, and suspecting that the L4–L5 and L5–S1 facet joints were the source of Torres' symptoms, Dr. Beer suggested a fusion from the L4 level through the S1 level of the spine. Torres agreed to proceed with the surgery. On August 16, 2007, Dr. Beer performed the recommended two-level fusion surgery.[2] Dr. Beer's Operative Report noted a preoperative/postoperative diagnosis of "lumbar spondylitic disease, L4–L5 and L5–S1."

[¶ 10] The Division initially concluded that Torres had suffered a compensable injury as a result of the December 2006 slip-and-fall accident and awarded benefits. However, in a series of eight "Final Determination" letters issued between October 4 and October 22, 2007, the Division denied Torres medical and temporary total disability benefits related to the August 2007 back surgery. Central to the Division's denial was its determination that the surgery was not causally related to the December 2006 work accident. Torres objected to the denial of benefits, and the matter was referred for hearing before the OAH.[3]

[¶ 11] A contested case hearing was convened on April 1, 2008. The hearing examiner received into evidence Torres' current and past medical records, and heard testimony from Torres. The hearing examiner also considered the deposition testimony of Dr. Beer and Dr. Ross and a report prepared by Dr. Nathan S. Simpson, who conducted an independent medical evaluation on behalf of the Division.

[¶ 12] Dr. Beer testified that he performed the surgery to repair instability in the L4–L5 and L5–S1 facet joints in Torres' back, which he believed was the source of Torres' low back pain. Dr. Beer noted that

his intraoperative findings confirmed what he had identified on the 2007 MRI and his preoperative diagnosis; Torres had "some degenerative changes in his facet joints, and some looseness of the joints." Dr. Beer testified that facet joint instability can result from a fall similar to that suffered by Torres. He also acknowledged that it can be caused by degenerative changes in the spine. Relying on his medical findings and the history provided by Torres, Dr. Beer opined that Torres' need for back surgery was directly related to his December 2006 work-related injury.

[¶ 13] Dr. Ross generally testified that the 2007 MRI showed degenerative changes in Torres' low back, but was otherwise fairly normal. He testified that Torres did not appear to have neurological deficit, and that he diagnosed Torres' condition as a lumbar and sacroiliac sprain. Dr. Ross noted that Torres' obesity could have contributed to his low back problems. Dr. Ross offered no opinion as to whether Torres' surgery was related to the 2006 slip-and-fall accident.

[¶ 14] Torres testified that he never had any problems with his low back before the December 2006 fall. Torres claimed the 2004 and 2005 injuries were minor, and that he reported them solely because of company policy. He also claimed he had no recollection of seeking medical treatment or undergoing an MRI for the 2004 reported injury. Torres testified that, after the 2006 fall, he experienced severe pain in his low back and numbness in his legs. Torres testified he continued to suffer from low back pain and bilateral numbness until the August 16, 2007, surgery.

[¶ 15] Dr. Simpson's opinion as to the necessity of the 2007 surgery differed from that of Dr. Beer. Dr. Simpson compared Torres' MRI from 2004 with the 2007 MRI and noted that, other than a slight increase in degeneration, the MRI's were essentially the same. Dr. Simpson noted that the 2007

---

2. It does not appear from the record that preauthorization for the surgery was sought from the Division.

3. The record shows only Torres' objections and requests for hearing relating to three of the eight

Final Determinations issued by the Division. However, all eight Final Determinations were referred to OAH and considered at the contested case hearing.

MRI showed the presence of facet degenerative joint disease at the L4–L5 level, with a small subchondral cyst in the right L4–L5 facet, and degenerative changes in the L5–S1 facet joints. Dr. Simpson also noted the 2007 MRI showed no evidence of acute injury. In addition, Dr. Simpson noted that Torres had complained of low back pain radiating into his left leg and sought medical treatment prior to the 2006 work injury. Based on his record review, Dr. Simpson concluded there was no causal link between Torres' 2006 work accident and the two-level fusion surgery.

[¶ 16] The hearing examiner concluded that Torres had not met his burden of proving that the back surgery was necessitated by his December 2006 work injury. The hearing examiner upheld the Division's denial of medical and temporary total disability benefits related to Torres' back surgery and subsequent recovery period. On review, the district court affirmed the hearing examiner's decision. This appeal followed.

## STANDARD OF REVIEW

[¶ 17] On appeal from a district court's review of an administrative agency's decision, we afford no deference to the district court's decision. Rather, we review the case as if it came directly from the agency. *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008); *McIntosh v. State ex rel. Wyoming Medical Comm'n*, 2007 WY 108, ¶ 8, 162 P.3d 483, 487 (Wyo. 2007). As in all administrative proceedings, our review is governed by the factors specified in Wyo. Stat. Ann. § 16–3–114(c) (Lexis-Nexis 2009), which provides in pertinent part that a reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed: and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

* * * *

(E) Unsupported by substantial evidence in a case reviewed on the record

of an agency hearing provided by statute.

[¶ 18] We explained the proper application of these standards in *Dale*, ¶¶ 20–26, 188 P.3d at 560–62. In short, we defer to an agency's findings of fact if supported by substantial evidence. *Id.*, ¶ 22, 188 P.3d at 561. We will not substitute our judgment for that of the agency if the agency's decision is reasonable under the circumstances. *Id.* We review an agency's finding that the burdened party failed to prove all the elements of his claim, as in this case, to determine "whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole." *Id.; see also Langberg v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 39, ¶ 10, 203 P.3d 1098, 1101 (Wyo.2009); *Horn–Dalton v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 14, ¶ 7, 200 P.3d 810, 813 (Wyo. 2009). As always, we review an agency's conclusions of law de novo. *Dale*, ¶ 26, 188 P.3d at 561.

## DISCUSSION

[¶ 19] The law governing a claimant's burden of proof is well established:

In order to be eligible to receive worker's compensation benefits, a claimant must have sustained an "injury" as defined by Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2001). " 'Injury' means any harmful change in the human organism other than normal aging ... arising out of and in the course of employment while at work...." To demonstrate that an injury arose out of the course of employment, the claimant must establish a causal connection between the work-related incident and the injury. *Hanks v. City of Casper*, 2001 WY 4, ¶ 6, 16 P.3d 710, 711 (Wyo.2001). The claimant bears the burden of proving this causal connection by a preponderance of the evidence. *Clark v. State ex rel. Wyoming Workers' Safety and Compensation Div.*, 2001 WY 132, ¶ 19, 36 P.3d 1145, 1150 (Wyo.2001). "A 'pre-

ponderance of the evidence' is defined as 'proof which leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence.'" *Matter of Worker's Compensation Claim of Thornberg*, 913 P.2d 863, 866 (Wyo.1996) (quoting *Scherling v. Kilgore*, 599 P.2d 1352, 1359 (Wyo. 1979)).

*Anastos v. General Chemical Soda Ash*, 2005 WY 122, ¶ 20, 120 P.3d 658, 665–66 (Wyo.2005).

"Injury," as the term is defined in Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2003) of the Wyoming Workers' Compensation Act, does not include any injury or condition preexisting at the time employment begins with the employer against whom a claim is made. However, "in Wyoming an employer takes the employee as he finds him." *Lindbloom v. Teton International*, 684 P.2d 1388, 1389 (Wyo.1984). If an employee suffers from a preexisting condition, that employee may still recover if his employment substantially or materially aggravates that condition. *Id.* In *Lindbloom*, we cited with approval the widely accepted treatise, Larson's Workmen's Compensation Law, for the proposition that:

Preexisting disease or infirmity of the employee does not disqualify a claim under the "arising out of employment" requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought.

1 Larson's Workmen's Compensation Law, § 12.20, p. 273–276. Larson goes on to say:

Since the rule of law stated at the beginning of this section is so widely accepted, in practice most of the problems in this area are medical rather than legal. * * * * It will be found, then, that denials of compensation in this category are almost entirely the result of holdings that the evidence did not support a finding that the employment contributed to the final result. Whether the employment aggravated, accelerat-

ed, or combined with the internal weakness or disease to produce the disability is a question of fact, not law, and a finding of fact on this point ... based on any medical testimony ... will not be disturbed on appeal.

*Id.*, § 12.20, p. 313–16.

*Boyce v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2005 WY 9, ¶ 10, 105 P.3d 451, 454–55 (Wyo.2005).

Expert opinion testimony ordinarily will be required to establish the link between the employee's work activity or injury and the preexisting disease or condition; the expert need not state with specificity that the work activities or injury materially or substantially aggravated, accelerated, or combined with the preexisting disease or condition to necessitate the medical treatment for which compensation is sought; and the expert need not apportion between the work activity or injury and the preexisting disease or condition; the relative contribution of the work activity or injury and the preexisting disease or condition is not weighed. *Boyce*, ¶¶ 11, 16, 105 P.3d at 455–56.

*Ramos v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2007 WY 85, ¶¶ 17–18, 158 P.3d 670, 676–77 (Wyo.2007); *see also Straube v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 66, ¶ 15, 208 P.3d 41, 47–48 (Wyo.2009); *Montoya v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 32, ¶ 22, 203 P.3d 1083, 1089–90 (Wyo. 2009).

[¶ 20] With these principles in mind, we now turn our attention to the issue at hand in this case. It is undisputed that Torres suffered from a preexisting degenerative condition in his low back. It is also undisputed that Torres suffered a work injury on December 28, 2006. The issue before us is whether the hearing examiner properly determined that Torres had not met his burden of proving the back surgery was causally related to his 2006 work injury.

[¶ 21] Our review shows that the only evidence presented by Torres on the issue of causation was his own testimony and the medical opinion of Dr. Beer. Torres asserted that he did not injure his back until he

slipped on the ice in the Home Depot parking lot. However, the medical evidence was not entirely consistent with his claims in that regard, as we have set out more fully above. Noting these inconsistencies, the hearing examiner concluded that Torres was not entirely credible, stating:

69. ... Torres['] attempt to minimize his prior incidents is concerning to this Office. While Torres testified he did not feel he had a prior injury, the medical records prove different. After Torres' July 2004 incident, Torres told his doctor he felt severe low back pain radiating into his left leg. At hearing, Torres denied he had ever suffered from back pain radiating into his legs prior to the December 28, 2006, incident. Additionally, Torres' claim that if he did have a prior injury, the injury was only minor and is not supported by Dr. Brown's finding that Torres' condition was severe enough to order an MRI. Thus, this Office finds much of Torres' testimony regarding his condition to be questionable at best.

[¶ 22] As the trier of fact, the hearing examiner had the responsibility of making credibility determinations. *Stewart v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 2007 WY 58, ¶ 14, 155 P.3d 198, 203 (Wyo.2007). From our review of the record, we cannot say that the hearing examiner's determination regarding Torres' credibility was contrary to the weight of the evidence. *Glaze v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 102, ¶ 29, 214 P.3d 228, 235 (Wyo.2009); *Stewart*, ¶ 14, 155 P.3d at 203. Consequently, we will not second-guess that determination. *Stewart*, ¶ 14, 155 P.3d at 203.

[¶ 23] The hearing examiner also was not persuaded by the opinion of Dr. Beer and afforded it little weight. The hearing examiner noted that Dr. Beer had based his opinion on an incomplete medical history, was not aware that Torres had complained of back pain and sought medical attention prior to the 2006 injury, and had been diagnosed with lumbar spine degenerative disease. Dr. Beer's opinion was based, in part, on the belief that Torres had not suffered low back pain and radiating leg pain until the 2006 incident. However, Torres' medical records indicated complaints of severe low back pain radiating into his left leg in July 2004. The hearing officer also noted that Dr. Beer did not address how Torres' preexisting degenerative condition might have affected his need for the fusion surgery, nor provide a detailed explanation as to why he reached the conclusion that Torres' back condition was caused by the 2006 work injury.

[¶ 24] It was the hearing examiner's responsibility to determine relevancy, assign probative value and ascribe the relevant weight to be given Dr. Beer's opinion. *Spletzer v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 90, ¶ 21, 116 P.3d 1103, 1112 (Wyo.2005); *Clark v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 934 P.2d 1269, 1271 (Wyo.1997). The hearing examiner was not bound by Dr. Beer's opinion and was entitled to disregard it if he found the opinion "unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete and inaccurate medical history provided by the claimant." *Watkins v. State ex rel. Wyoming Medical Comm'n*, 2011 WY 49, ¶ 25, 250 P.3d 1082, 1091 (Wyo.2011) (quoting *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 148, ¶ 15, 123 P.3d 143, 148 (Wyo.2005)). Our task is not to reweigh the evidence but only to determine if substantial evidence exists to support the hearing examiner's conclusion. *Spletzer*, ¶ 22, 116 P.3d at 1112. Upon reviewing the record before us, we find substantial evidence exists to support the hearing examiner's conclusion regarding the credibility and weight given to Dr. Beer's opinion.

[¶ 25] In sum, we find that the hearing examiner's determination that Torres had failed to prove a causal relationship between the fusion surgery and the 2006 work incident is not against the overwhelming weight of the evidence in this case. Affirmed.