2011 WY 34

**In the Matter of the Worker's Compensation Claim of Andrea L. McCALL–PRESSE, an Employee of Wyoming Women's Business Center.**

**Andrea L. McCall–Presse, Appellant (Claimant),**

v.

**State of Wyoming, ex rel., Wyoming Workers' Safety and Compensation Division, Appellee (Respondent).**

**No. S–10–0186.**

Supreme Court of Wyoming.

Feb. 25, 2011.

Representing Appellant: Sean W. Scoggin of McKellar, Tiedeken & Scoggin, LLC, Cheyenne, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; James Michael Causey, Senior Assistant Attorney General; Kelly Roseberry, Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1]   Andrea L. McCall–Presse (the appellant) alleged an injury arising from exposure to a chemical cloud while driving in the course of her employment. The Wyoming Workers' Safety and Compensation Division (the Division) denied benefits to the appellant for her alleged injuries. The case was referred to the Office of Administrative Hearings (OAH) for a contested case hearing, after which the OAH denied benefits. The appellant now appeals from the district court's affirmance of the OAH's denial of benefits. Finding substantial evidence in the record to support the OAH's denial, we will affirm.

### ISSUE

[¶ 2]   Was the OAH's decision denying benefits to the appellant supported by substantial evidence?

### FACTS

[¶ 3]   On April 14, 2008, as part of her employment with the Wyoming Women's Business Center (WWBC), the appellant was driving to Lyman, Wyoming, to meet with a client.[1] According to the appellant, as she was driving on Interstate Highway 80 (I–80) west of Rock Springs, Wyoming, she noticed a chemical cloud being pulled through the car vents. The appellant allegedly inhaled some of the chemicals which she claimed caused immediate problems with her eyes, skin, nose, sinuses, mouth, throat, and lungs. The appellant pulled her car over to the side of I–80, rolled her windows down to get fresh air, and flushed her eyes with water. The appellant did not notice any other cars pulling over as she had. The appellant did not call anyone for help, nor did she seek medical treatment that day. At some point, the appellant continued toward Lyman to meet with her client.

[¶ 4]   Upon returning to Cheyenne, Wyoming, on April 15, 2008, the appellant called the Poison Control Center, which advised her to go to the emergency room. The appellant went to the Cheyenne Regional Medical Center emergency room on April 16, 2008, complaining of gas exposure. A chest x-ray revealed "[m]ild hyperinflation [of the lungs], otherwise unremarkable chest." The treating physician, Dr. Michael Means, diagnosed the appellant with "[p]ossible gas exposure" and "[i]nhalation." On April 18, 2008, the appellant filled out a Wyoming Report of Injury, which was signed by her supervisor, Rosemary Bratton. In the months following the alleged incident, several other physicians evaluated the appellant. More will be said about the examinations and subsequent reports prepared by these physicians in the discussion section.

[¶ 5]   In a Final Determination dated May 9, 2008, the Division denied the appellant's claim. The Division concluded that there was no evidence linking the appellant's alleged injury to her employment. The appellant timely objected to the Division's denial and requested a hearing. The matter was referred to the OAH and a contested case hearing was held on March 3, 2009, and June 15, 2009.[2] On July 15, 2009, the OAH issued its Findings of Fact, Conclusions of Law and Order, denying the appellant's claim for worker's compensation benefits. Specifically, the OAH concluded that the appellant proved that she suffered an injury, but failed to prove that the injury was causally related to her employment. Details regarding the evidence presented and the OAH's specific findings and conclusions will be discussed below. The appellant appealed the OAH's decision to the district court which affirmed the OAH's decision on June 3, 2010. This timely appeal followed.

---

1. The appellant is the director of client services and micro-lending for WWBC.

2. There were two hearing dates in order to provide the appellant with additional time to gather evidence supporting her claim.

## STANDARD OF REVIEW

[¶ 6] Our review of agency action is governed by W.R.A.P. 12.09(a) and the Wyoming Administrative Procedures Act, found at Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2009). We give no special deference to the district court's findings and conclusions, but rather we review the case as if it came directly from the administrative agency. *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Kaczmarek*, 2009 WY 110, ¶ 7, 215 P.3d 277, 280 (Wyo.2009); *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 7, 49 P.3d 163, 166 (Wyo.2002). When factual findings are challenged, as they are in this case, "we will affirm those findings if they are supported by substantial evidence." *Newman*, 2002 WY 91, ¶ 26, 49 P.3d at 173. We have said the following regarding the use of the substantial evidence test:

Thus, in the interests of simplifying the process of identifying the correct standard of review and bringing our approach closer to the original use of the two standards, we hold that henceforth the substantial evidence standard will be applied any time we review an evidentiary ruling.... If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *See, Wyo. Consumer Group v. Public Serv. Comm'n of Wyo.*, 882 P.2d 858, 860–61 (Wyo.1994); [*Bd. of Trustees, Laramie County Sch. Dist. No. 1 v.*] *Spiegel*, 549 P.2d [1161,] 1178 [ (Wyo. 1976) ] (discussing the definition of substantial evidence as "contrary to the overwhelming weight of the evidence"). If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo.2008).

## DISCUSSION

[¶ 7] The appellant argues that substantial evidence was presented at the contested case hearing to meet her burden of proving that she suffered a work related injury. In order to meet that burden, the appellant was required to prove that she suffered an injury as defined by Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2009). In pertinent part, that statute provides:

"Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

Wyo. Stat. Ann. § 27–14–102(a)(xi). In order to prove that the injury "ar[ose] out of and in the course of employment," a causal connection between the injury and the appellant's employment must exist. *Haagensen v. State ex rel. Wyo. Workers' Comp. Div.*, 949 P.2d 865, 867 (Wyo.1997). "A causal connection exists between the employee's injury and the course of employment when 'there is a nexus between the injury and some condition, activity, environment or requirement of the employment.'" *Id.* (quoting *Stuckey v. State ex rel. Wyo. Workers' Comp. Div.*, 890 P.2d 1097, 1098 (Wyo.1995)). The employee-claimant has the burden to prove all of the statutory elements by a preponderance of the evidence. *Thornberg v. State ex rel. Wyo. Workers' Comp. Div.*, 913 P.2d 863, 866 (Wyo.1996). "A 'preponderance of the evidence' is defined as 'proof which leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence.'" *Judd v. State ex rel. Wyo.*

*Workers' Safety & Comp. Div.*, 2010 WY 85, ¶ 31, 233 P.3d 956, 968 (Wyo.2010) (quoting *Anastos v. Gen. Chem. Soda Ash*, 2005 WY 122, ¶ 20, 120 P.3d 658, 666 (Wyo.2005)); *see also Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 22, 247 P.3d 845, 852 (Wyo.2011) ("preponderance of the evidence" is the same as more probable than not).

[¶ 8]   There is no dispute in this case as to whether the appellant suffered an injury, but rather the issue is whether the appellant's injury arose out of and in the course of her employment.[3]  Stated differently, the issue is whether the appellant presented sufficient evidence to prove the causal connection between her injury and her employment.  The appellant points to medical records and reports prepared by three medical professionals, the testimony of a naturopath doctor, and correspondence written by business associates to support her contention that she met her burden of proving that a causal connection existed.  We will address each of these pieces of evidence in turn.

[¶ 9]   The appellant relies on medical records prepared by Dr. Means, Dr. Hoyt, and Dr. Pacheco.  Dr. Means, the attending physician at the time appellant visited the emergency room at Cheyenne Regional Medical Center, noted a diagnosis as "[p]ossible gas exposure" and "[i]nhalation." (Emphasis added.)  Dr. Hoyt, who evaluated the appellant two days after her visit to the emergency room, diagnosed the appellant with "chemical bronchitis," but did not provide an opinion as to the source of the injury.  These doctors' diagnoses help prove the existence of an injury, but fail to prove a causal connection between the injury and the appellant's employment.  Neither of these doctors were able to say that it "was more probable than not" that the appellant's injury "arose out of and in the course of her employment."  Consequently, the OAH determined that the doctors' opinions were not sufficient to meet the appellant's burden.

[¶ 10]   The appellant also relies on the medical records prepared by Dr. Pacheco, from whom the appellant sought treatment nearly six months after the alleged injury.  Dr. Pacheco diagnosed the appellant with "[a]n acute chemical exposure, with both central nervous system (CNS) and respiratory effect occurring abruptly while en route on the highway between Rock Springs, Wyoming, and Green River, Wyoming."  In response to Dr. Pacheco's opinions, the hearing examiner made the following observations:

[A]lthough Dr. Pacheco stated it was her opinion that [the appellant]'s [injuries] were caused by [the appellant']s April 14, 2008, alleged chemical exposure, her opinion was dependent on the credibility of [the appellant]'s history regarding her injury and dependent on proof of the existence of some substance which could cause the injuries.  In her initial assessment of [the appellant], Dr. Pacheco incorrectly stated she was diagnosed with acute chemical inhalation by Dr. Means at the emergency room; instead, Dr. Means diagnosed [the appellant] with possible gas exposure and inhalation.  As previously indicated, [the appellant]'s stated history of her injury and accident was not entirely believable due to unexplained significant differences between the seriousness of the events and immediate symptoms as described by [the appellant] and her failure to seek immediate medical care, as well as the lack of objective medical evidence of any significant injury at the emergency room.  Moreover, [the appellant] did not provide any credible or concrete evidence as to the existence of the substance, the nature of the substance, the location of the substance or the source of the substance, which Dr. Pacheco speculated was hydrogen sulfide, without any evidence to support her speculation.  In addition, [the appellant] demonstrated a willingness to be evasive during questioning.

The hearing examiner disregarded Dr. Pacheco's opinion regarding the cause of the

---

3.  The OAH concluded that the appellant proved that she had suffered an injury, namely chemical bronchitis and an inhalational injury, as diagnosed by Dr. Hoyt.  However, the OAH also concluded that the appellant failed to prove by a preponderance of the evidence that her injuries "arose out of her employment and were suffered in the course of her employment while at work for WWBC."

appellant's injury due to unsupported speculation as to the existence of a chemical capable of inflicting the injury, an incomplete medical history of the appellant, and the lack of corroborating evidence to support the appellant's self-reporting of her injury and the cause of that injury. We have said, "a hearing examiner is entitled to disregard an expert opinion if he finds the opinion is unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete and inaccurate medical history provided by the claimant." *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 148, ¶ 15, 123 P.3d 143, 148 (Wyo.2005). Furthermore, it is the hearing examiner's duty to weigh the credibility of witnesses. *Herrera v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 103, ¶ 15, 236 P.3d 277, 282 (Wyo.2010). The OAH disregarded Dr. Pacheco's opinion and provided sufficient reasoning for doing so. Accordingly, we find that it was reasonable for the OAH to find that Dr. Pacheco's opinion did not provide the evidence necessary to establish the causal connection between the appellant's injury and her employment.

[¶ 11] Similar to the conclusions made relating to Dr. Pacheco's opinions, the OAH found that Dr. Minard's testimony was unhelpful and unpersuasive. Dr. Minard is a naturopathic doctor[4] who examined the appellant before and after the appellant's alleged injury, and who the appellant points to as providing evidence that she met her burden of proving a compensable injury. Dr. Minard conducted an EAV/Biomeridian test on the appellant which showed a change in the balance of her overall health.[5] Dr. Minard's testimony was given no weight because, "[Dr.] Minard acknowledged she is simply a consultant providing advice to her clients, she is not a medical doctor, she does not diagnose and she could not explain the EAV/Biomeridian testing process." Further-

more, the OAH noted that "there was no evidence provided regarding the accuracy or general acceptance of the EAV/Biomeridian testing." As we stated above, it is the hearing examiner's duty to weigh the credibility of witnesses and the hearing examiner may disregard expert testimony that is unreasonable. *Herrera*, 2010 WY 103, ¶ 15, 236 P.3d at 282; *Taylor*, 2005 WY 148, ¶ 15, 123 P.3d at 148. Dr. Minard is not a medical doctor and she relied on a non-traditional means of treatment, which was unaccompanied by evidence corroborating its general acceptance as a reliable means of testing, and she was unable to explain with satisfactory detail how the testing works. Therefore, we find it reasonable for the OAH to give no weight to Dr. Minard's testimony.

[¶ 12] The appellant also relies on correspondence from three business associates to support her contention that she met her burden of proving that her injury was causally related to her employment. The first is the Wyoming Report of Injury which the appellant prepared and which was signed by Rosemary Bratton, the appellant's supervisor. The document contained a checked box indicating that Ms. Bratton believed the appellant's injury was work related. However, this document alone does not do much to corroborate the appellant's story. Ms. Bratton was not with the appellant at the time the injury purportedly occurred, nor is Ms. Bratton's opinion as to the cause of the injury based on anything other than the appellant's self-reporting. In short, the fact that Ms. Bratton checked the box indicating that she believed the injury was work related is not evidence of anything other than that Ms. Bratton had no reason to believe that it was not work related. The appellant also relies on a letter from the client she saw on April 14, 2008, at Little America just east of Lyman, Wyoming. The appellant argues that this letter proves the causal connection be-

---

4. Dr. Minard is not a medical doctor, but she has a doctorate degree in naturopathy. Dr. Minard is also a massage therapist and an occupational therapist.

5. Dr. Minard testified that she conducted EAV/Biomeridian testing on the appellant on April 17, 2008. Dr. Minard described the test

generally as "a technique where you put a small current with a stylus into acupuncture points, and then the machine reads how much current or energy comes back out, and from that the programs in the computer make—ascertain what systems are out of balance and what systems are in balance."

tween her injury and her employment. We disagree. In that letter, the client indicates that the appellant complained that she had encountered "some kind of gas or something" on her way to meet with him. The client's letter, much like the injury report filled out by Ms. Bratton, does little to corroborate the appellant's story, because the client's observations are entirely based on the appellant's self-reporting. Furthermore, the client states in his letter that at the time the appellant complained about encountering the gas, he "didn't think much of it," which leaves the impression that the appellant did not seem that affected by the alleged encounter with the gas or chemical cloud.

[¶ 13] The final letter upon which the appellant relies was written by Steve Despain, the Wyoming District Director for the U.S. Small Business Administration. In short, Mr. Despain's letter indicates that as part of the appellant's job, she is sometimes required to travel around the state to meet with clients. Simply put, this letter does nothing to support the appellant's contention that her alleged injury was a result of exposure to a chemical or gas cloud or that it was causally related to her employment. We conclude that it was reasonable for the OAH to give little weight or wholly disregard these letters for the reasons stated above.

[¶ 14] Given the lack of other evidence supporting a causal connection between the injury and the appellant's employment, the appellant's credibility was vitally important to prove the causal connection between her injury and her employment. We have said that a claimant can prove her claim in some instances through her own testimony. *Ikenberry v. State ex rel. Wyo. Workers' Comp. Div.,* 5 P.3d 799, 803 (Wyo.2000). However, the claimant's testimony alone may not be sufficient if the claimant's testimony is impeached, discredited, or if it is not supported by surrounding circumstances. *Id.* Regarding the appellant's testimony, the OAH made the following findings:

First, [the appellant]'s account of the incident was not supported by the corrobo-

rating evidence. [The appellant] testified there were no other vehicles on I-80 in the vicinity when she encountered the mysterious chemicals. No evidence was presented as to the precise or even general location of the incident and there was no evidence of any possible source of the mysterious chemicals. For instance, there was no evidence of a nearby mine, gas well, oil well, train, or tank of some sort. In addition, there was no testing performed on her vehicle or clothes to try to determine the presence of any chemical or substances which could cause her injuries. Simply put, more evidence was needed to establish the existence and nature of [the] mysterious substance which allegedly caused [the appellant]'s injuries. Dr. Wodushek [6] candidly acknowledged the lack of evidence when he noted:

.... Unfortunately [the appellant]'s event was not witnessed and there does not seem to be indications that anyone else was exposed in a similar way that day. As such, it seems there is not [sic] way to confirm whether this gas was in fact the cause of [the appellant]'s symptoms. [The appellant] noted that she received conflicting information from one physician who suggested exposure at one time but later suggested that her symptoms may be secondary to allergies or asthma. I really have no understanding of whether this type of gas is actually released in the area that [the appellant] was driving through. I also have no idea as to how much exposure she may have been subject to while driving her car on the expressway....

Second, [the appellant]'s rendition of the incident on April 14, 2008, and her subsequent reactions to the event were difficult to believe. [The appellant] described a significant event involving a "horrible smell" which caused her to experience serious symptoms, required her to pull off of the highway, caused her to lose track of time and perhaps lose consciousness, yet she did not seek medical care until two

---

6. Dr. Wodushek is the Director of Neuropsychology at the Center for Neurorehabilitation Services, P.C., in Fort Collins, Colorado. Dr. Wodushek evaluated the appellant on December 30, 2008.

days later after meeting with her client and driving all the way back to Cheyenne. In addition, when she was examined in the emergency room, the physical exam revealed normal vital signs, no heart problems, no lung problems, no eye or nose problems and no visible rash.

[¶ 15] The OAH found the appellant's story "difficult to believe," and unsupported by the surrounding circumstances. As indicated above, the duty and responsibility to weigh and judge the credibility of witnesses and evidence lies with the OAH as the fact-finder, and we will not re-weigh or second guess those determinations. *Herrera*, 2010 WY 103, ¶ 15, 236 P.3d at 282. We agree with the OAH and note the questionable behavior of the appellant following the alleged incident as well as the absence of any evidence corroborating the appellant's story. Consequently, it was reasonable for the OAH to conclude that the appellant's testimony alone was insufficient to prove the causal connection between her injury and her employment.

[¶ 16] In denying the appellant's claim, in addition to rejecting the appellant's evidence, the OAH relied on evidence presented by the Division, which further supports our finding that substantial evidence exists in the record to affirm the OAH's findings. The Division introduced an investigative report by Zach Barnett, who was employed by Bonacue Investigative Services, as well as Mr. Barnett's testimony from the contested case hearing. Mr. Barnett was hired by the Division to investigate the possible sources of the alleged chemical cloud reported by the appellant. Mr. Barnett summarized his findings in the following manner:

> After contacting all possible sources of information pertinent to a chemical cloud including WYDOT Highway Patrol, OSHA [ (Wyoming Occupational Safety and Health Administration) ], DEQ [ (Department of Environmental Quality) ], HOMELAND SECURITY, the three HAZMAT responders for this section of Interstate 80 [ (Green River Fire Department, Sweetwater County Fire Department, and Rock Springs Fire Department) ], Sweetwater County Public Health, as well as two newspapers, The Wyoming Tribune Eagle and

The Rocket Miner, we were unable to find any incident in that time frame that would potentially cause a "chemical cloud" as described by [the appellant].

Mr. Barnett's report emphasizes the primary defect in the appellant's case and ultimately why she has failed to meet her burden: the lack of evidence demonstrating a possible source or existence of a chemical cloud to corroborate her story, which evidence would causally connect her injury to her employment.

## CONCLUSION

[¶ 17] The OAH's denial of benefits was supported by substantial evidence. The OAH concluded that the medical professionals who evaluated the appellant were unable, without mere speculation, to opine that the appellant's injury more probably than not arose out of her employment. The letters provided by the appellant's business associates were insufficient to prove a causal connection between the appellant's injury and her employment. Furthermore, the appellant's story was incredible and uncorroborated, and the Division's investigation produced no possible source of the alleged chemical cloud. Consequently, we affirm the OAH's denial of benefits to the appellant.

[¶ 18] Affirmed.