The STATE of Wyoming, ex rel. WYOMING WORKER'S COMPENSATION DIVISION, Appellant (Objector-Defendant),

v.

Richard B. TAYLOR, Appellee (Employee-Claimant),

v.

EXETER DRILLING COMPANY (Employer-Defendant).

No. 86–299.

Supreme Court of Wyoming.

June 4, 1987.

A.G. McClintock, Atty. Gen., Patrick J. Crank, Asst. Atty. Gen., Josephine T. Porter, Asst. Atty. Gen. (argued), for appellant; Susan Overeem, Asst. Atty. Gen., present at argument.

Charles D. Phillips of Phillips and Phillips, Evanston, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT, and MACY, JJ.

CARDINE, Justice.

Appellant Worker's Compensation Division of the State of Wyoming appeals from an order awarding temporary total disability benefits to appellee Richard Taylor. The issues presented are (1) whether the court erred in continuing temporary total disability benefits after appellee's condition had stabilized and reached maximum medical improvement, and (2) whether the court's finding of temporary total disability was supported by sufficient evidence.

We reverse.

While employed by Exeter Drilling Company as a floor hand on a drilling rig, appellee Richard Taylor fell from a flow

line and shattered his ankle. The severity of appellee's injury is illustrated by the following comments of Dr. Carl A. Mattsson, the orthopedic surgeon who treated the fracture:

"He had a falling—a fracture of the right distal tibia at the joint which was severely comminuted, displaced and he had disruption of the tibia and fibular synostosis. It was just shattered. In fact, the talus was shoved up into the comminuted fragments of the tibia.

\* \* \* \* \* \*

"Well, the talus is the main bone for \* \* your ankle \* \* \* and that talus bone was shoved right up inside the long bone of the leg below the knee, and the bone was so shattered, it was just a terrible injury \* \* \*. [T]he tibia, the long bone that connects the foot to the leg below the knee, there were many chips that were gone off the articular surface there. It was a terrible injury."

Appellee began receiving temporary total disability benefits on January 30, 1985. After two operations to treat the fracture, appellee's condition reached maximum medical improvement on March 6, 1986, according to Dr. Mattsson. Later that month, Dr. Mattsson assessed appellee's physical impairment at 32% of the whole body. On April 28, 1986, the State filed an objection to any further temporary total disability benefits, contending that once appellee reached maximum medical improvement and was given a permanent partial disability rating he was no longer temporarily disabled.

At a hearing on the State's objection, the extent of appellee's physical impairment was not significantly contested. The bulk of the evidence related to appellee's inability to find employment after his injury despite vigorous efforts toward that end. In the opinion of the district court, the evidence demonstrated that because of appellee's inability to perform heavy manual labor after the injury, and because of his limited or nonexistent skills and abilities in other areas, it was unlikely that he would succeed in finding gainful employment unless he was retrained. On the basis of this evidence, the district court found that appellee's vocational recovery was not com-

plete and ordered that appellee continue to receive temporary total disability benefits for a period of six months, after which his permanent disability would be assessed.

 The critical question we face in this appeal is whether an injured employee whose medical condition has stabilized may continue to receive temporary total disability benefits when he is unable to find employment due to nonmedical factors. Our inquiry begins with § 27–12–402, W.S.1977, Cum.Supp.1986, which provides in relevant part:

"(a) Temporary total disability means a compensable injury which temporarily incapacitates the employee from performing any work at any gainful occupation for which he is reasonably suited by experience or training for the time, but from which he may be able to resume work. \* \* \*

"(b) \* \* \* As soon as the recovery is so complete that the earning power of the employee at a gainful occupation for which he is reasonably suited by experience or training, is substantially restored, the payment shall cease."

Applying these provisions in *Pacific Power and Light v. Parsons*, Wyo., 692 P.2d 226, 228 (1984), we said "[t]he purpose of temporary disability compensation is to provide income for an employee during the time of healing from his injury and until his condition has stabilized." We also stated that " '[t]he determination whether the period of temporary total disability has ended may also involve nonmedical facts touching claimant's employment situation.' " *Id.* at 229 (quoting 2 Larson, Workmen's Compensation Law, § 57.12 (1983)).

We held in Parsons that occasional work during the healing period should not automatically result in a denial of temporary total disability benefits. Parsons thus stands for the proposition that in determining when eligibility for temporary total disability benefits ceases, nonmedical factors may be considered *during the healing period*. Once the healing period has ended, however, nonmedical factors become relevant only in determining the extent of the employee's permanent disability.

"Once the physical condition is stabilized, the question becomes: is the inability to

get work the result of the injury? If it is, the straightforward approach would then be to find the claimant permanently disabled by his residual impairment. If later the claimant gets steady employment, the case can be reopened. In the meantime, the claimant is definitely disabled in the compensation sense, because his physical impairment causes his unemployment; but at the same time the disability cannot accurately be characterized as temporary, since it has become stable and what remains is permanent. By the process of elimination, one comes to a total permanent award, subject of course to reopening." 2 Larson, Workmen's Compensation Law, § 57.12(d) (1986). (Footnotes omitted).

While the nonmedical factors relied upon by the district court are relevant in arriving at a permanent disability award, they may not be relied upon to extend an employee's temporary total disability benefits after the employee's medical condition has stabilized.

The district court's order continuing temporary total disability benefits after appellee had reached maximum medical improvement cannot stand. Reversed and remanded for proceedings consistent with this opinion.