2011 WY 133

STATE of Wyoming ex rel. WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellant (Respondent/Objector),

v.

Shannon CAVE, Appellee (Petitioner/Employee).

No. S–10–0126.

Supreme Court of Wyoming.

Sept. 20, 2011.

Representing Appellant: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; James Michael Causey, Senior Assistant Attorney General.

Representing Appellee: Donna D. Domonkos, Cheyenne, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1]  Appellee Shannon Cave suffered a work-related injury in November 2007 and was awarded temporary total disability (TTD) benefits during her recovery.  In September 2008, Cave received an offer of temporary light duty work from her employer, which she rejected.  As a result of her refusal to accept what the Wyoming Workers' Safety and Compensation Division (Division) deemed a bona fide offer of light duty work, the Division reduced Cave's TTD benefits in accordance with Wyo. Stat. Ann. § 27–14–404(j) (LexisNexis 2011) to one-third of the previously authorized amount.  The Office of Administrative Hearings (OAH) upheld the reduction of TTD benefits.  On review, the district court reversed the OAH decision, and the Division appealed to this Court.  Finding that the OAH decision is supported by sub-

stantial evidence and not contrary to law, we reverse the district court's order.

## ISSUES

[¶2] The Division presents the following issue for our review:

Was the Hearing Examiner's determination that [Cave] had rejected a bona fide light duty offer and, therefore, had to receive a reduction in her temporary total disability benefits supported by substantial evidence?

Cave responds with essentially the same issue and raises this additional issue:

Whether the Office of Administrative Hearings' decision is arbitrary, capricious or otherwise not in accordance with the law.

## FACTS

[¶3] In November 2007, Cave was employed as an assistant manager at the Loaf 'N Jug convenience store in Marbleton, Wyoming. While stocking and arranging soda in the store, Cave fell from a ladder and injured her low back. The Division found Cave's injury to be compensable and awarded TTD benefits.

[¶4] From November 14, 2007, through October 9, 2008, Cave received full TTD benefits. During this time, several things occurred that ultimately affected Cave's continued receipt of full benefits. In July 2008, an apparent dispute arose between Cave and the store manager, Larry Ridley, relating to Cave's return to work. On July 7, 2008, Cave's treating physician, Dr. Geoffrey Skene, released her to return to light duty work, with restrictions of no bending and lifting more than twenty pounds. After being informed of the release, Ridley placed Cave on the work schedule and assigned her stocking duties which Cave believed was beyond her physical capabilities and contrary to Dr. Skene's release. Cave reported to Dr. Skene that her employer was not honoring her light duty restrictions. At Cave's request, Dr. Skene issued a new, more detailed release that permitted Cave to return to her prior managerial job duties, but did not clear her to perform floor duties involving stocking, bending, or lifting more than twenty pounds.

[¶5] In addition to contacting Dr. Skene, Cave wrote a letter to her claims analyst at the Division. Among other things, Cave complained that Ridley had assigned her job duties which exceeded her physical limitations, and that he was unfairly refusing to reinstate her to the position of assistant manager, with the duties attendant to that position. Cave also reported that she had been informed by fellow employees and customers of Loaf 'N Jug that Ridley had threatened to do anything he could to get her to quit when she returned to work. Cave did not go back to work in July and continued to receive full disability benefits.

[¶6] The Division subsequently notified Cave's corporate employer, Mini Mart, Inc., of the provisions of temporary light duty employment and the requirements of Wyo. Stat. Ann. § 27-4-404(j) in a letter addressed to its risk manager, Harry Hollifield. After receiving the letter, Hollifield began working with Ridley to develop a plan to bring Cave back to work. On August 22, 2008, Hollifield sent a letter to Dr. Skene regarding Cave's potential return to light duty employment. Along with the letter, Hollifield sent an Agreement for Temporary Light Duty/Restricted Work and asked the doctor to review the job offer and approve it concerning the scope of the duties requested and Cave's physical limitations.[1] The Agreement was on a form provided by the Division and contained the following specifics: 1) Cave would work 2–5 days per week; 2) Cave would work 8 hours per day; 3) Cave would be paid $13.00 per hour;[2] 4) the position would begin on September 16, 2008, and continue until Cave's light duty restrictions were lifted; 5) the duties of the position would be to assist

---

1. Hollifield testified that he relied on input from Dr. Skene and Ridley, as well as his twenty-four years of experience with the company, in formulating the job duties to be performed under the offer.

2. This is the hourly wage Cave was earning at the time of her injury.

with cashier duties, scan vendors, scan off bad merchandise, work back stock within restrictions, and assist with office duties; 6) Cave would be restricted from performing duties requiring bending, twisting, and lifting anything over twenty pounds. Dr. Skene signed the Agreement on September 5, 2008, authorizing Cave's return to light duty work in accordance with the job duties and restrictions stated therein.

[¶ 7]   Hollifield forwarded the Agreement to Cave on September 11, 2008, with a request that she promptly respond to the job offer. Approximately three weeks later, on October 2, Cave returned the Agreement to Hollifield, stating she was refusing the light duty employment. Cave attached a lengthy statement setting forth her reasons for rejecting the job offer. Primarily, Cave refused the offer because she was fearful of retribution from Ridley if she returned to work under his management. Cave also claimed she was unable to read the middle line of the offer and noted it did not specifically state she would be reinstated to the position of assistant manager or receive a pay increase allegedly promised her upon her return.

[¶ 8]   On October 15, 2008, the Division issued a Final Determination notifying Cave that it was reducing her TTD benefits to one-third of the previously determined rate because of her refusal of the offer of light duty work. Cave objected to the reduction in benefits and requested a hearing, again noting her concern of retribution from Ridley and complaining of discriminatory treatment by Loaf 'N Jug. The Division promptly referred the matter to OAH for a hearing.

[¶ 9]   During a contested case hearing held in April 2009, Cave presented evidence focusing extensively on Ridley, his supervisory shortcomings and misdeeds at the store,[3] and his alleged threat toward her in an effort to prove that any offer of light duty work under Ridley's supervision, including the instant offer, was illusory and not bona fide. Cave acknowledged at the hearing that she

could have, and would have, performed the duties set forth in the Agreement for temporary light duty work but for Ridley's managerial oversight at the store. She also acknowledged that she never further pursued light duty employment with Loaf 'N Jug despite Ridley's termination as manager in November 2008.

[¶ 10]   The OAH ultimately concluded that Cave had refused a bona fide offer of light duty employment that met all statutory requirements and was within her physical limitations as set forth by her treating physician. Accordingly, the OAH upheld the Division's reduction in Cave's TTD benefits. Cave appealed this determination to the district court and, on April 13, 2010, the district court reversed the OAH's decision. The Division timely appealed the district court's order.

### STANDARD OF REVIEW

[¶ 11]   When an appeal is taken from a district court's review of an administrative agency's decision, we consider the case as if it had come directly from the agency without giving any deference to the district court's decision. *Torres v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 93, ¶ 17, 253 P.3d 175, 179 (Wyo.2011); *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). Our review of the agency's decision is governed by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2011), which requires in pertinent part that a reviewing court:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

\* \* \* \*

(E) Unsupported by substantial evidence in a case reviewed on the record

---

**3.** Documents introduced during the hearing showed that Ridley was convicted of felony larceny resulting from the theft of more than $10,000.00 in cash receipts from the store between October 11 and November 10, 2008. Ridley was terminated from his employment at Loaf 'N Jug in November 2008.

of an agency hearing provided by statute.

[¶ 12] We explained the proper application of these standards in *Dale*, ¶¶ 20–26, 188 P.3d at 560–62. In short, we review the agency's findings of fact by applying the substantial evidence standard. *Id.*, ¶ 22, 188 P.3d at 561. We have described that standard as follows:

> When the burdened party prevailed before the agency, we will determine if substantial evidence exists to support the finding for that party by considering whether there is relevant evidence in the entire record which a reasonable mind might accept in support of the agency's conclusions. If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *See, Wyo. Consumer Group v. Public Serv. Comm'n of Wyo.*, 882 P.2d 858, 860–61 (Wyo.1994); [*Board of Trustees, Laramie County School Dist. No. 1 v.*] *Spiegel*, 549 P.2d [1161,] 1178 [ (Wyo.1976) ] (discussing the definition of substantial evidence as "contrary to the overwhelming weight of the evidence"). If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale*, ¶ 22, 188 P.3d at 561. We review an agency's conclusions of law *de novo* and will affirm only if the agency's conclusions are in accordance with the law. *Torres*, ¶ 18, 253 P.3d at 179; *Dale*, ¶ 26, 188 P.3d at 561–62.

## DISCUSSION

[¶ 13] Generally, TTD benefits are governed by Wyo. Stat. Ann. § 27–14–404. Relevant to the present case is subsection (j), which provides in part:

> (j) An employer may make a written offer of temporary light duty work to an employee receiving temporary total disability under subsection (a) of this section. The offer shall be a bona fide offer on a form supplied by the division, stating with specificity the proposed hours of employment, starting date, wage and physical or other functional capacity requirements of the light duty work. If the employee accepts the offer, the temporary total disability award shall cease and the employee shall receive a temporary light duty award, subject to the following terms and conditions:
>
> (i) After notice to the employer, the health care provider who certified temporary total disability has certified on the light duty work agreement that the employee is released to perform the light duty work described in the agreement;
>
> (ii) All periods of light duty work may not exceed one (1) year cumulatively for any one (1) injury;
>
> (iii) The temporary light duty assignment commences not less than fourteen (14) days following the written offer;
>
> * * * *
>
> (v) The employer shall provide the division before commencement of the light duty work with a copy of the light duty work agreement signed by the employer and the employee, and shall report to the division by the fifteenth of each month the employee's hours and rate of pay for the previous month;
>
> (vi) The temporary total disability award of any employee refusing a bona fide written offer of temporary light duty work pursuant to this subsection shall be reduced by two-thirds (2/3) unless the employee provides written proof to the employer and the division of enrollment by the employee in any collegiate, vocational retraining, general education development or other program

approved by the division which is designed to retrain the employee for employment in an occupation other than that previously offered by the employer[.]

Wyo. Stat. Ann. § 27–14–404(j) (LexisNexis 2011). The statute does not define what a bona fide offer is other than to list certain terms that must be included in the written offer, such as wage and start date. It is the meaning of the term "bona fide offer" that is the primary point of contention in this appeal.

[¶ 14] Cave has taken the position that the evidence concerning the actions and statements by Ridley should have compelled the hearing examiner to conclude that the offer of light duty work extended by Hollifield was not bona fide. Cave acknowledges that, on the surface, the light duty job offer appears to be bona fide in that it took into consideration every physical limitation she had and accommodated those limitations. However, she claims the offer was based on incomplete information regarding Ridley's prior threats and actions, as well as his criminal activity, and, therefore, the offer was fundamentally unfair and not bona fide. On the other hand, the Division has taken the position that the non-medical factors cited by Cave are irrelevant and that the hearing examiner properly determined, given the evidence, that the offer tendered by Hollifield was bona fide.

[¶ 15] In considering whether Cave had received and rejected a bona fide offer of light duty work, the OAH hearing examiner concluded: [4]

56. Given that the written offer of light duty work extended by Hollifield to Cave met all the statutory requirements with respect to listing the pay, hours etc. this Hearing Examiner is left to decide if it is bona fide in light of the testimony and evidence regarding Ridley's treatment of employees and threats to Cave. In that regard, based upon the foregoing facts, this Hearing Examiner finds and concludes that,

a) Hollifield extended a bona fide offer on behalf of the employer, which was within Cave's limitations. It is noted however, and Hollifield acknowledged, that Ridley was the one who would be responsible for Cave's work assignments.

b) Given his prior response to Cave's releases to return to work and the undisputed testimony regarding Ridley's threats, Cave may have had reason for concern about returning to work.

c) Cave's concerns were somewhat speculative however in that while responsibility for the books was taken away from those who suspected Ridley of theft, there is no evidence he actually terminated any such employees. More importantly there was no evidence that Ridley ever actually required any employees to exceed physical limitations or caused any employees physical harm.

d) In any event, Cave's concerns had little if anything to do with her work related injuries and her physical limitations and mostly related to nonmedical issues of being set up or losing her job to keep her from shedding further light on Ridley's misdeeds.

57. The only case that this Hearing Officer is aware of which addresses a similar issue is *Block v. State of Wyoming, ex rel. Wyoming Workers' Safety and Compensation Division,* [2009] WY 34[, 202 P.3d 1064] (2009). At issue was an employer's offer to rehire Block in his prior position with appropriate accommodations for his impairment or disability. Block refused the offer of employment and was denied permanent partial disability benefits. The Supreme Court indicated that there were "several problems" with the finding that the job offer from the employee [sic] was a "bona fide" offer. First, the Court noted that the offer was based on lack of personal knowledge by the offeror of the job duties Block would be performing and that she had referred to[ ] Block's prior position as a light duty position when

---

4. We have chosen not to correct all of the various grammatical, punctuation, and citation errors.

it was heavy duty. See *Block*, at ¶ 16 [202 P.3d 1064]. The Court noted that the particular employee offering the job to Block had assumed that Block could perform 95% of the job duties of his prior position and only minor accommodations would be necessary for him to hold the job. *Id.* The Court went on to note that the offer made by the employer in *Block* was one that "necessarily created ambiguity" because the only certain term in the offer was the job title, with Block's tasks and exact wage unstated and was to be determined on information the employer did not have in it's [sic] possession. Likewise, there was no indication as to what accommodations the employer would make in the offer. Perhaps most importantly, the Court stated, "In short, the written offer was devoid of information necessary for a reasonable person to be able to seriously consider the offer." *Block*, supra at ¶ 19 [202 P.3d 1064].

58. The matter at hand is distinguishable from *Block* as *Block* was limited to discussions regarding the terms of employment, ie. wage and job duties, medical issues and whether or not the offer met the employee's physical limitations. That is not the problem in this case. This case turns almost exclusively on the interplay of non medical issues and the offer.

59. In attempting to determine whether such non medical considerations would preclude the offer from being considered bona fide, this Hearing Examiner must not only consider the plain meaning of the words but the context in which they are used. The plain meaning of the words ["]bona fide" is described in Black's Law Dictionary as follows,

> "In or with good faith; honestly, openly, and sincerely; without deceit or fraud. Truly; actually; without simulation or pretense. Innocently in the attitude of trust and confidence; without notice of fraud, etc. real, actual, genuine and not feigned." Bona fide is closely associated with the term "good faith". *Blacks Law Dictionary*, 5[th] Edition, (1979).

60. In the context of the workers compensation matter, the offer extended by Hollifield was bona fide as it honestly met Cave's physical limitations as set forth by her physician.

61. With respect to the context, consideration must be given to the purpose of and the statutory scheme for temporary disability payments. *Paravecchio v. Memorial Hosp. of Laramie County*, 742 P.2d 1276 (Wyo.1987), cert. denied, 485 U.S. 915, 108 S.Ct. 1088, 99 L.Ed.2d 249 (1988) (holding that statutes relating to the same subject matter should be read together to effectuate the legislature's intent). A review of the statutes and case law shows that payment of TTD benefits is dependent upon the work related injury and how the injury affects the employee's ability to work. Temporary total disability payments are not generally based upon other non medical factors that may affect the employee's ability to work.

62. At the onset, Wyo. Stat. Ann. § 27–14–404 (LexisNexis 2005) reads in pertinent part as follows:

> (a) If after a compensable injury is sustained **and as a result of the injury** the employee is subject to temporary total disability as defined under W.S. 27–14–102(a)(xviii), the injured employee is entitled to receive a temporary total disability award for the period of temporary total disability as provided by W.S. 27–14–403(c).... [ (Emphasis added.) ]

63. Further, the purpose of temporary total disability benefits is to "provide income for an employee during the time of healing from his injury and until his condition has stabilized." *Phillips v. TIC—The Indus. Co of Wyoming*, [2005 WY 40, ¶ 27,] 109 P.3d 520, 5[32] (Wyo.2005).

64. Finally it has been determined that "the legislature intended for workers who are temporarily injury [sic] to be compensated until their earning power is substantially restored. *State ex Rel. Wyoming Workers' Comp. Div. v. Ohnstad*, 802 P.2d 865[, 867] (Wyo.199[0] ) at [¶ 8]. The statute does however not require actual employment, only that the earning power is substantially restored. *Shassetz v. State*

*ex rel. Wyo. Workers' Safety & Comp. Div.,* 920 P.2d 1246[, 1250–51] (Wyo.1996) at ¶ 13.

65. In *Wyoming Worker's Comp. Div. v. Taylor,* 1987 WY 77, 737 P.2d 1063, it was recognized that during the healing period non medical factors may be considered. The Court relied upon *Pacific Power and Light v. Parsons,* Wy., 692 P.2d 226 [ (1984) ], but in that case a combination of the medical and non medical factors led to the determination of whether or not the employee[']s earning capacity had been substantially restored.

66. In the case at hand, it seems clear that Cave rejected the offer due almost exclusively to non medical reasons. Despite the earlier concerns that Cave was scheduled to stock upon her first release to return to work, Cave acknowledged that the subsequent written offer was within her limitations and that she could have and would have accepted the job so long as the manager was not out to get her for her role in proving he was embezzling.

67. Based upon the statutory scheme and the case law, this Hearing Officer is of the opinion that the law was not intended to nor designed to take into consideration non medical reasons in this context. Even if there are legitimate concerns for discrimination, whistle blowing or other work related matters, the workers compensation scheme is not intended, designed or the proper place to address those concerns.

[¶ 16] After careful review, we cannot say the hearing examiner's legal conclusions were erroneous as a matter of law. Nor can we say from our review of the record that the hearing examiner's determination was contrary to the overwhelming weight of the evidence, as Cave maintains. Therefore, we have no trouble concluding that the hearing examiner properly determined that the offer of light duty employment tendered to Cave was bona fide.

[¶ 17] As a final matter, Cave contends, as the district court found, that the OAH's decision is not in accordance with the law because the hearing examiner failed to consider the principles of contract law, specifically the doctrine of "anticipatory repudia-tion." However, Cave's reliance on that doctrine in this case is misplaced. Anticipatory repudiation concerns a renouncement of a contractual obligation or duty, which necessarily requires the existence of a contract. *Roussalis v. Wyoming Medical Center, Inc.,* 4 P.3d 209, 254 (Wyo.2000); *see also* 17A Am.Jur.2d *Contracts* § 722 (2004). Here, Cave did not accept her employer's offer of light duty employment and, consequently, no contract or contractual obligation was created which could be repudiated. Cave's contention of error in this regard is simply without merit.

## CONCLUSION

[¶ 18] The district court improperly substituted its judgment for that of the hearing examiner when it reversed the OAH decision reducing Cave's TTD benefits. The OAH decision was supported by substantial evidence and was not otherwise arbitrary, capricious or contrary to law. Consequently, we reverse and remand to the district court with directions the case be returned to the OAH for reinstatement of the order reducing Cave's TTD benefits.